HARRY E. HAYWARD, Respondent, v. THE EM-
PLOYERS LIABILITY ASSURANCE CORPORA-
TION, LIMITED, OF LONDON, ENGLAND, a Cor-
poration, Appellant.

St. Louis Court of Appeals.   Opinion Filed January 8, 1924.

1. **INSURANCE**: Burglary and Theft Insurance: Intoxicating Liquors:
Stolen: Evidence: Case For The Jury.   In an action upon a policy
of burglary and theft insurance to recover for the loss of certain
liquors alleged to have been stolen from the residence of plaintiff,
*held* that there was sufficient evidence of the theft of the liquors
to take the case to the jury.

2. ———: ———: ———: ———: Insurer's Liability: Dependent
upon Lawful Market Value: Not ''Bootlegging'' Value.   In an ac-
tion on a burglary and theft insurance policy covering intoxi-
cating liquors, the policy being written before the national pro-
hibition law took effect and the loss occurring thereafter, the
policy providing that in case of loss the measure of liability was
to be the actual cash value of the property at the time of the loss,
there being but one market and that was the lawful market under
government permit, the evidence of value should have been con-
fined to the value that could have been obtained for the liquors
in the lawful open market under the eye and countenance of the
government, had plaintiff under permit sold same, and not the
price prevailng in forbidden subterranean channels;   hence, evi-
dence of ''bootlegging'' value was inadmissible.

3. **INSTRUCTIONS**: Intoxcating Liquors: Stolen: Instruction Not
Based on Evidence Properly Refused.   In an action on a burglary
and theft insurance policy covering intoxicating liquors, an in-
struction that if any part of the liquor sued for was consumed
by either of the plaintiffs, or consumed by other persons with the
permission of either of them, and that the plaintiffs have forgot-
ten that such a part of said liquor was consumed by either of them
or by their permission, the jury could not include therein anything
for the value of such part of the liquor sued for so consumed, was
properly refused, there being no evidence upon which to base such
instruction, plaintiff testifying positively that no part of the liquor
had been consumed.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Benjamin J. Klene*, Judge.

REVERSED AND REMANDED.

*A. & J. F. Lee* and *Joseph Renard* for appellant.

(1-2)    Defendant's demurrer to the evidence should have sustained, because plaintiff failed to establish that the loss of the liquor which he claimed disappeared was occasioned by its felonious abstraction from the interior of plaintiff's house.  Schindler v. U. S. Fidelity, etc., Co., 109 N. Y. S. 723; Gordon v. Aetna Indemnity Co., 116 N. Y. S. 558; Polstein v. General Accident Co., 158 N. Y. S. 868; Duschene v. National Surety, 139 N. Y. S. 881; See, also, 46 L. R. A. (N. S.) 567; Frankel v. Mass. Bonding Co., 177 S. W. 775.  (3)    That the court erred in refusing to give and read to the jury defendant's Instructions E, needs no citation of authorities.  (4-5)    The court erred in refusing to give and read to the jury defendant's Instruction F, and allowing plaintiff to introduce evidence to show the fictitious and unlawful value of liquor at the time of the alleged disappearance.  Section 6, Ttle 2 of an Act for the enforcement of War Time Prohibition; Murphy v. St. Joseph Transfer Co., 235 S. W. 138.    (6) There is no testimony to support the award to plaintiff in the verdict of attorney's fee, and the court erred in allowing said verdict to stand over defendant's objection and exception.  Berryman v. Motor Co., 199 Mo. App. 503; Blackwell v. Ins., Co., 80 Mo. App. 75; Weston v. Ins. Co., 191 Mo. App. 282; Lafont v. Ins. Co., 157 Mo. App. 671; Patterson v. Ins. Co., 174 Mo. App. 37; Strawbridge v. Ins. Co., 193 Mo. App. 687.

*Nagel & Kirby* and *Milton R. Stahl,* for respondent.

(1)    The intoxicating liquors involved in this case were articles of value, the possession and use of which are sanctioned and protected by law.  National Prohibition Act, Title 2, sec. 33, 41 Stat. L. 317; Regulation No. 60, Bureau of Internal Revenue, section 80; Street v. Lincoln Safe Deposit Co. et al., 254 U. S. 88; Murphy v. St. Joseph

Transfer Co., 235 S. W. 138; Chicago Bonding and Insurance Co. v. Oliner, 139 Md. 408; Hall v. Moran, 81 Fla. 706; State v. Friedman, 120 Atl. 8 (1922, New Jersey), same case on motion for rehearing, 120 Atl. 9. (2) The court properly overruled appellant's demurrer to the evidence because there was sufficient evidence of theft. Fienglas v. New Amsterdam Casualty Co., 151 N. Y. Supp. 371; Orlando v. Great Eastern Casualty Co., 155 N. Y. Supp. 20; Stich v. Fidelity and Deposit Co. of Maryland, 159 N. Y. Supp. 712; Hass v. Fidelity and Deposit Co. of Maryland, 160 N. Y. Supp. 1101; Fine v. New Amsterdam Casualty Co., 162 N. Y. Supp. 135; Wolf v. Aetna Accident and Liability Co., 170 N. Y. Supp. 787; Fidelity and Deposit Co. of N. Y. v. Dulany, 125 Md. 486; Great Eastern Casualty Co. v. Boli, 187 S. W. 686; Miller v. Mass. Bonding and Casualty Co., 247 Pa. 182. (3) Because the property had no market value at the time or place of loss, or because its value is difficult of ascertainment does not prevent the recovery of substantial damages. In such cases wide latitude is given in the introduction of evidence as to value. Atchison, Topeka & Santa Fe Rld. Co. v. Stanford, 12 Kan. 354; Southern Express Co. v. Owens, 146 Ala. 412; Johnston v. Farmers' Fire Ins. Co., 106 Mich. 96; Milwaukee Trust Co. v. Milwaukee, 151 Wis. 224; Chicago Bonding and Ins. Co. v. Oliner, 139 Md. 408. (4) Objections to the introduction of evidence not raised in the trial court cannot be raised on appeal. Coughlan v. Haeussler, 50 Mo. 126; Gaty v. United Railways Co., 286 Mo. 503; Baldwin v. Kansas City Rys. Co., 231 S. W. 280; Clooney v. Wells, 252 S. W. 72. (5) There was evidence to support the award of an attorney's fee for vexatious delay. Brown v. Railway Passenger Assurance Co., 45 Mo. 221; Lockwood v. Insurance Co., 47 Mo. 50; Hicks v. Metropolitan Life Ins. Co., 186 Mo. App. 162.

DAUES, J.—This is a suit upon a policy of theft insurance to recover for the loss of certain liquors alleged to have been stolen from the residence of plaintiff. The

cause was tried to a jury with a verdict for plaintiff in the sum of $500, the amount named in the policy, together with $47.50 interest; "damages, for vexatious refusal to pay $100; attorney's fees, $100;" total $647.50. Defendant brings the case here on appeal.

The evidence shows, and indeed it is conceded, that plaintiff had a policy of burglary and theft insurance with defendant insurance company at the time the loss is alleged to have taken place. The terms of this policy comprehended intoxicating liquors, and ran from June 19, 1919, to June 19, 1920, covering the residence of the plaintiff at 5154 Waterman avenue, St. Louis. The policy provided that in case of loss the measure of liability was to be the actual cash value of the property at the time of the loss. According to plaintiff's testimony he acquired the liquors, the loss of which is here involved, prior to January 17, 1920, when prohibition became effective; that up until the effective date of prohibition these liquors were stored in cellars or vaults of the Racket Club and the St. Louis Country Club, two social organizations, the one within and the other near the city of St. Louis. Plaintiff says that about January 15, 1920, he was notified by the two clubs that because of the prohibition laws, all liquors had to be removed and he thereupon removed his store of liquors to his residence at 5154 Waterman avenue, this city. This removal took place about January 17, 1920. At the time the liquors were removed the clubs made an inventory and placed a list of the different liquors with each lot. These lists plaintiff checked over to determine if he had received all of his liquors and he found them to be correct. When the liquors reached his residence they were placed in two closets upstairs and in a locked storeroom in the basement. No one had access to the locker or closets except the plaintiff, his sister and his two servants, both of the servants having died before the time of the trial. On March 30, 1920, about ten weeks after the liquors were stored in plaintiff's residence at 5154 Waterman avenue, he moved to 5843 Waterman avenue. On that occasion it was discovered that some of

the liquor had been stolen or taken away. Plaintiff ascertained that a case of gin had been broken into and that ten bottles from the case had been removed. On the next day plaintiff carefully checked up the liquors with the lists which had accompanied same when it was delivered from the clubs to his residence, and found that one case of Steinwender's Green Label Bourbon Whiskey, ten bottles of Gordon Gin, four bottles of Bicardi Rum and three bottles of Tom Gin had been taken. Plaintiff testified that between January 15 and March 30, 1920, he had consumed none of the liquor, nor that his sister or anyone else with his permission had taken any of same. Plaintiff notified the police and made out proof of loss, as required by the policy sued upon. The defendant declined to pay the claim and insisted on a settlement on the basis of the original cost of the liquor before prohibition.

There is no point made on the pleadings. Appellant insists that its demurrer to the evidence should have been sustained because plaintiff failed to establish that the loss of the liquor which he claimed disappeared was occasioned by its felonious abstraction from the interior of plaintiff's house. In other words, that there was not sufficient evidence of the theft of the liquors to take the case to a jury. The evidence, we think, is ample to justify the submission of that issue to a jury. The evidence tended to show that the liquors were removed from the two social clubs to the residence of plaintiff about January 17, 1920. A list of the articles accompanied the lot, and this list was checked by plaintiff. On redirect examination, the following appears in plaintiff's testimony in this particular:

"Q. Can you state positively that all this liquor was moved to your home 5154 Waterman avenue prior to January 17, 1920? A. Yes.

"Q. You can? A. Yes."

The liquor was then stored by him in two closets upstairs and the remainder in a locked storeroom in the basement and kept secure from outsiders. Subsequently,

on March 30, 1920, the loss in the basement was discovered, and it was also discovered that a case of gin in the basement had been broken into, and a check by plaintiff of his liquors showed the loss as charged.

Appellant on this point relies upon cases which are to the effect that where property merely disappears and there is no evidence beyond the mere fact that same has disappeared that, it may be deemed just as likely that the property was lost or misplaced as that it was stolen, and that in such case there is not sufficient evidence of theft to take the case to a jury, the inference that the property may have been misplaced or lost being just as strong as the inference that same had been stolen. These cases are of no influence here, we think. We have examined these cases and all involve the loss of jewelry or personal property of a character which could very easily be accidentally misplaced or lost, such as watches, rings, bracelets, etc. The property here is of bulk and proportion that same could not easily be lost or misplaced. We think the evidence here is enough to show circumstances sufficient to raise the inference that the liquors were stolen. The policy under consideration does not contain the provision that the insured must produce direct evidence or proof of theft. The evidence undoubtedly shows a loss of the liquors and, indeed, that one box was actually broken into, and all the circumstances surrounding the loss, we think, support the inference of theft. Some contention is made by appellant that the proof shows that the whiskey was stolen from the basement, if stolen at all, and that there is no proof that the Steinwender brand and some others were kept in the basement. We do not think that this is of any consequence in the case as the plaintiff testified, and seemingly with real candor, that he was not certain as to just where the different brands were kept, but that he had consumed none of the liquors whether kept upstairs or downstairs, and that a check of the whole amount of the liquor showed the loss as indicated in his testimony.

It is next insisted that the court erred in allowing plaintiff to introduce evidence to show the fictitious and unlawful value of the liquor at the time of its disappearance and in refusing defendant's instruction involving the national prohibition act. The theory advanced below, as we understand it, was that the intoxicating liquors included in this suit had no value at all by reason of the Eighteenth Amendment to the Federal Constitution and legislation pursuant thereto. But it is now insisted that the value of such liquor in any event is the price which must be obtained lawfully for such liquor in a sale to wholesalers under governmental regulations and under a permit from the government. Appellant complains that testimony was admitted to show the fictitious and unlawful price upon these liquors upon the theory that such was the "bootlegger's" price, and since plaintiff could not replace such liquors without being guilty of a crime against the laws of the land, that such price may not be considered and that a recovery could be had only for the value of the liquors when lawfully sold by a person having a government permit for such sale. The policy provided that in case of theft the insurance company should be liable for the actual cash value of the property at the time of the loss of same.

Let us first examine the question as to whether the liquors had any value at all at the time of the theft. In Street v. Lincoln Safe Deposit Co. 254 U. S. 88, the Supreme Court of the United States ruled that intoxicating liquors lawfully obtained prior to the effective date of national prohibition and which were stored in a public warehouse or kept for consumption by the owner and his family or bona-fide guests only, could be lawfully kept by the owner thereof after the national prohibition act became effective, and that the owner could lawfully transport such liquors from the place of storage to his home under permit from the government.

In Chicago Bonding and Insurance Company v. Oliner, 139 Md. 408, a case in which the owner of liquors sued

upon an insurance policy for the loss of intoxicating liquors by theft, the court held that though a dealing in the article is prohibited by the government, this does not show that the article has no value.

The question as to whether liquor has a value since prohibition became effective was recently passed upon by the Kansas City Court of Appeals in Murphy v. St. Joseph Transfer Co., 235 S. W. 138. That case was a suit against a warehouseman for failure to deliver plaintiff's liquors which he had stored in the warehouse, the liquors having become lost during the period when prohibition was effective. That court, in discussing defendant's position, states that the defendant urges the point that the liquors involved in the suit had no market value for beverage purposes and had no value for any other purposes. Answering that contention, the court said:

"This argument is neither conclusive nor convincing, for the reason that the laws and regulations above quoted apply exclusively to the sale of intoxicating liquors for beverage purposes. The record shows that the liquor in question was lawfully acquired, and it is a rule of law that liquors so acquired and kept are as much surrounded and protected by the laws affecting property rights as any other property."

We think there can be no question but that the liquors at the time of the alleged loss possessed a value.

Proceeding now to appellant's theory that the liquor had no value beyond the sale value on government permit. The instruction submitted upon this hypothesis is defectively drawn, but the serious question arises on the question of the admission of evidence. The market, that is the lawful market, for liquors, has been much restricted and regulated by the government. It is true, property may not have a market value, yet a recovery may be had of substantial damages when such property is destroyed or damaged under circumstances invading the rights of the owner. Such are the following cases cited by respondent: Railroad v. Stanford, 12 Kan. 354;

Southern Express Co. v. Owens, 146 Ala. 412; Johnston v. Farmers' Fire Ins. Co., 106 Mich. 96; Milwaukee Trust Co. v. Milwaukee, 151 Wis. 224.

But that is not our case. We have a market value in so far as the law allows the market to remain open for liquors. In the instant case the liquors were stolen when the market value of same had been destroyed for beverage purposes. Liquor however could still be used by plaintiff as a beverage, and lawfully so. Plaintiff's witnesses gave to the jury their estimate of what the whiskey could be sold for at "bootleggers'" prices. Plaintiff's expert witness on value was permitted over the objection of defendant to testify that the whiskey was worth $180 a case on the "bootleggers'" market; that the ten bottles of gin were worth $200, etc; other witnesses gave similar testimony. It was shown and undisputed that the whiskey on the lawful market under permit of the government was worth $30 per case, so that the court allowed evidence of an unlawful liquor traffic price to enter into the basis by which the "cash value" of this liquor was to be determined. What plaintiff was entitled to under the policy was the value of the liquor represented by money. This means what the liquor could be made to represent in money in the open market, if there was an open market. There was but one market, and that was the lawful market; the other so-called market is one resting in crime and is unlawful and is not to be considered as a basis of recovery. When we speak of value, we imply a transaction in the open, lawful market. It does not embrace the secret price paid by law violators. It is not difficult to contemplate that the seller in such illicit transaction really collects for the hazzards of prosecution in the event he is caught in the meshes of the law. The seller charges for the element of chance he takes of being fined or imprisoned. This element does not find place in the open lawful market and has no place here. The competent evidence of the cash value of the lost liquors is far under the verdict of the jury.

Plaintiff's evidence of the "bootlegging" value ranged from $249 to $520 for the lot stolen. The original cost of the liquors to plaintiff was about $90. According to the only testimony on the question of the value, lawful value, of said liquors at the time of its disappearance if sold by a person possessing a government permit, with tax and other charges, it would have had a cash value of less than one-half the amount represented by the verdict. The verdict shows conclusively that the jury took the "bootlegging" value as the basis of their estimate of value. The court committed reversible error in our opinion in admitting this evidence. The evidence of value should have been confined to the value that could have been obtained for the liquors in the lawful open market under the eye and countenance of the government, had plaintiff under permit sold same, and not the price prevailing in forbidden subterranean channels.

We have examined the case of insurance Co. v. Oliner, supra, wherein the Court of Appeals of Maryland uses language which might be construed to mean that a different view is there entertained of this question. If that decision is susceptible to such construction, to-wit that the price on the forbidden market is now the measure of the value of liquors, then we decline to follow it.

This same question seems to have been in the case of Murphy v. St. Joseph Transfer Co., 235 S. W. 138, but the Kansas City Court of Appeals did not find it necessary to rule on the proposition, so it seems that we have no authority in the State to guide us in the problem.

Complaint is also made of Instruction D (referred to in appellant's brief as Instruction E). This instruction is as follows:

"The court instructs you that if you find and believe from the evidence that any part of the liquor sued for in this case was consumed by either of the plaintiffs, or consumed by any other person with the permission of

either of them, and that the plaintiffs have forgotten that such part of said liquor was consumed by either of them, or by such permission, then, even if you find a verdict for the plaintiffs, you cannot include therein anything for the value of such part of the liquor sued for so consumed.''

This instruction was properly refused. There is no evidence in the record upon which to base this instruction. On the contrary, plaintiff testified positively that no part of the liquor had been consumed between January 15 and March 20, 1920. In addition to this, the question of theft was fully and completely submitted to the jury in other instructions given. There are other questions raised which fall out of the case under the view taken above.

For the reasons above set out, the judgment is reversed and the cause remanded. *Allen, P. J.*, and *Becker, J.*, concur.