## The Fidelity & Casualty Company of New York v. Wathen.

(Decided November 11, 1924.)

### Appeal from Bullitt Circuit Court.

1. Insurance—Not Incumbert Upon Insured to Show Whether Property was Lost from Home by Burglary, Larceny or Theft.—In action under policy indemnifying against burglary, larceny, or theft from residence, it was not incumbent on plaintiff to prove that property was lost as a result of burglary, through larceny or other theft, but only to establish facts from which jury was warranted in deducing that property disappeared either through burglary, larceny or theft.

2. Insurance—Evidence Held Sufficient to go to Jury on Theory of Larceny or Theft, but Not Burglary and to Support Verdict for Plaintiff.—Evidence held sufficient to carry to jury question whether property was lost through larceny or theft, but not burglary, and to support verdict for plaintiff on theory of larceny or theft.

3. Insurance—"Theft" is Broader Term than "Larceny," and Includes Any Wrongful Deprivation of Property of Another.— "Theft," within policy indemnifying against loss by burglary, larceny or theft, is a broader term than "larceny," and includes any wrongful deprivation of property of another, including embezzlement or swindling.

4. Larceny—"Larceny" is Felonious Taking of Property Without Consent and Against Will, with Intent to Convert.—"Larceny" is felonious taking of property of another without his consent and against his will, with intent to convert it to use of taker.

5. Burglary—"Burglary" is breaking and Entering Dwelling, with Intent to Commit Felony.—Burglary is breaking and entering of dwelling house of another in nighttime, with intent to commit felony, whether felony be actually committed or not.

6. Insurance—Evidence Held to Support Finding of Value of Diamond Taken from Insured.—Evidence held to support finding

that diamond in stick pin was worth $1,000.00, though insured, who testified thereto, did not know what it cost, nor its exact weight or size.

FRED FORCHT and J. R. ZIMMERMAN for appellant.

T. C. CARROLL and JOHN P. HASWELL for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

Appellant, the Fidelity & Casualty Company, issued and delivered to appellee, Wathen, a policy of insurance, whereby it agreed to indemnify him for all loss occasioned to him by burglary, larceny or theft of his property from within the interior of his residence, committed by any domestic servant or other employee of Wathen or by any other person or persons, except himself, including precious stones and articles of gold, platinum or silver, the maximum amount of such insurance or indemnity being the sum of $1,000.00, the premises being his residence at Bardstown Junction, in Bullitt county, Kentucky. This policy was in full force and effect at the time of the happening of the incident hereinafter recited.

Some time in the last days of December, 1921, appellee, Wathen, was invited to the house of a friend in a neighboring town for a holiday, and he went. Returning a day or so later to his home at Bardstown Junction he unlocked the door to the house. Passing into his room on the first floor, he removed his collar and tie, which he laid on the dresser in that room. He had worn in his tie on that trip a diamond stickpin, and when he removed his collar and tie he stuck the diamond pin in the tie and left it on the dresser. The door was closed and locked. In the course of the day Wathen went to a neighboring village to buy some hogs, but being unable to do so there, he went to another village, where he remained overnight, returning to his home next morning. When he came to the house he found it locked as he had left it. On entering he observed nothing unusual. Later in the day while dressing preparatory to going to Louisville he discovered, for the first time, that his stickpin was not in his tie where he left it on the dresser. He made diligent search but could not find it and was never able to find it thereafter. He then looked through the house for signs of burglars but could discover none. The door to his room was closed but two of the windows therein, while down, were not

locked.  He could see no evidence of the windows having been raised.    There were no tracks or other evidence of anyone having entered the house.    That evening he reported the loss to the insurance company, stating that the pin, a gift from his daughter, then dead, was worth $550.00.    Appellee Wathen was a widower and lived at his residence alone.    No member of the family, save Wathen, had been in the house for some weeks, and he kept no servants.    He testified that no one had a right to be in his house from the time he left his pin on the dresser until he discovered its loss, but he says he does not know what became of the pin.    On these facts the court submitted the cause to a jury over appellant's objection, it insisting that there was not sufficient evidence to carry the case to the jury; that the evidence offered by appellee was vague and uncertain, being equally consistent with two or more theories as to the loss; that is to say, there was just as much proof to show or account for disappearance of the stone as there was to show burglary, and in such case the court should have peremptorily directed the jury to find for the defendant company.

The only question, as we see it, necessary to decide on this appeal is, whether there was sufficient evidence to carry the case to the jury and to support the verdict. Appellee Wathen was the only witness who testified at the trial.    His evidence is entirely consistent.    There are no contradictions.  He proved that he left his diamond in his tie on the dresser in his room in the house described in the policy and that he locked the house and went away and when he returned the diamond was gone. It was not incumbent upon him to prove that the diamond was lost as a result of burglary, as in the case of National Surety Co. v. Redmon, 173 Ky. 294, or that it disappeared through larceny or through theft.    He made out his case when he established facts from which the jury was warranted in deducing the ultimate fact that the diamond had disappeared either through burglary, larceny or theft.    In the Redman case, *supra,* the insured charged that his diamond was lost through burglary, and we ruled that it was necessary for him to prove facts sufficient to establish the burglary, which in that case we held he did not do.

Theft is a broader term than larceny and includes any wrongful deprivation of property of another.  Ken-

tucky Statutes. Acts constituting embezzlement or swindling may properly be so-called, says Bouvier. Larceny is. the felonious taking of property of another without his consent and against his will, with the intent to convert it to the use of the taker. We do not think the evidence introduced by appellee Wathen was sufficient to establish that he lost his pin through burglary, which is defined to be the breaking and entering of a dwelling house of another in the nighttime with intent to commit a felony therein, whether the felony be actually committed or not.

The jury, as reasonable men, knew as well as they could know anything from human testimony that the diamond pin which appellee Wathen placed on his dresser with his tie and collar did not leave there of its own volition, or without the aid of some human agency. Whether it was taken by a burglar or by some person concealed in the house or otherwise purloined makes no difference under the terms of the policy. Certain it is that the diamond was taken from the tie of appellee Wathen without his knowledge or consent, by some one who had a knowledge of its value, to appropriate it to his own use. That the taker had knowledge of its value is manifest from the choice or selection of this one article from among many others. He took nothing else. From such facts the jury was warranted in concluding that the diamond was taken by a being that had reason. In other words a human being, and was not carried away by a mouse or some animal not possessing the power of reasoning.

We conclude that the trial court properly submitted the cause to the jury and that the jury was fully warranted from the evidence in returning a verdict in favor of appellee Wathen.

At the time appellee Wathen reported his loss to the insurance company he fixed the value of the pin at $550.00. Later, and within a few days, he amended his statement upon this subject by claiming something more than $1,000.00. In his pleading and evidence he says he was laboring under a misapprehension at the time he made his first claim, giving the following facts in support of this assertion: The diamond had been in the family for many years. His deceased wife had originally.owned it; later it passed to his daughter who, before her death, had it made into a stickpin for her father, appellee. He did not know what it cost nor exactly its weight or size,

but he stated it was larger than another diamond of a karat and a half, which he exhibited to the jury; that upon investigation he found that diamonds of the character of the one in question were worth at the time of the loss, in December, 1921, about $600.00 or $700.00 per karat, from which he reasoned that a diamond weighing one and one-half karats was worth $1,000.00, or more. All this was set forth in the petition of appellee Wathen and responded to by appellant company. The jury heard all the evidence upon the value of the stickpin and concluded it was worth $1,000.00. We think the evidence was sufficient upon this point.

Judgment affirmed.