CAPITOL SAVINGS & LOAN CO. *v.* ÆTNA CASUALTY & SURETY CO.

INSURANCE—THEFT—CIRCUMSTANTIAL EVIDENCE—QUESTION FOR JURY. Circumstantial evidence in action under policy insuring plaintiff against loss by burglary, robbery, larceny, theft or hold-up within plaintiff's offices *held,* sufficient to take to jury question of theft of government bonds payable to bearer which had been kept in office vault.

Appeal from Ingham; Carr (Leland W.), J. Submitted October 17, 1935. (Docket No. 106, Calendar No. 38,629.) Decided January 31, 1936.

Assumpsit by Capitol Savings & Loan Company, a Michigan corporation, against Ætna Casualty & Surety Company, a Connecticut corporation, to recover under a burglary, robbery, larceny, theft and hold-up policy, the value of bonds alleged to have been stolen. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Cummins & Cummins,* for plaintiff.

*Foster & Cameron* and *Stevenson, Butzel, Eaman & Long,* for defendant.

BUTZEL, J. This is an action in assumpsit to recover the value of two Home Owners Loan Corporation bonds of the par value of $1,000 each, alleged to have been stolen from the branch office of the plaintiff, in Detroit. The action is based upon an insurance policy issued by defendant insuring the plaintiff against loss by burglary, robbery, larceny, theft or hold-up of any money or securities while any of such property was actually within any of the offices of plaintiff.

On September 7, 1934, the two bonds were brought from Lansing to the Detroit office of plaintiff corporation by the president thereof, and by him delivered to the mortgage clerk of plaintiff, with instructions to put them where they would not be lost. The mortgage clerk placed the bonds in an envelope or wrapped them in a letter (he did not recall which), wrote on the outside of the wrapper or container the notation "Hilliard Green Mortgage," and placed the package in a cash box, on top of other documents and revenue and documentary stamps already in the cash box, and then placed the cash box in the vault of plaintiff. The vault was located

in a transparent glass partitioned office, known as the "cashier's room," which was within the offices of plaintiff, on the third floor of the Washington Boulevard Building, in Detroit. The only entrance to these offices is through double doors leading from the elevator lobby on that floor, and thence through a swinging gate into the main part of the offices. An attendant was usually stationed at this entrance, for the purpose of ascertaining the mission of any customer or other person entering the office. There is a door leading from the main portion of the inner offices to the cashier's room.

On September 20, 1934, that being 13 days after the bonds had been placed in the vault, the bookkeeper of plaintiff discovered that the bonds had disappeared. Nothing else in the cash box had been disturbed. Thorough search of the vault, the offices of plaintiff in Detroit, and of the waste paper in the basement was made, but the bonds were not found. Whereupon, plaintiff made claim of loss under the policy issued by defendant, and when such claim was denied, brought this action.

In the circuit court, a jury trial was had, and at the close of plaintiff's proofs the defendant made a motion for a directed verdict, which was denied. Whereupon, defendant rested its case, without offering any testimony in defense, and the case was submitted to the jury, which found for plaintiff. Defendant moved for a new trial, which was denied. Appeal was then taken to this court.

The sole question before us is whether there was any evidence of the theft of the bonds to warrant the trial court in submitting the case to the jury.

Twenty-two employees were employed in the Detroit office of plaintiff, during the period of time between September 7th and 20, 1934. Four of these

employees worked in the cashier's room. Four of the employees were possessed of the "combination" to the vault in which the bonds had been deposited. All of the 22 employees had permissive access to the vault, which was open to them from 8:30 or 9 o'clock in the forenoon of business days until 5 o'clock in the afternoon thereof. Many of the employees had occasion to enter the vault each business day and did so enter in the usual routine of their work. Others than employees had no occasion to enter the cashier's room or vault during the aforesaid period of 13 days.

The record before us discloses that only upon one occasion during the afore-mentioned 13 days was the cash box removed from its position in the vault, and then by the plaintiff's auditor from Lansing, who was balancing a bank account and was looking for a bank statement which was on paper of a distinguishable color. On that occasion, the cash box was taken from its place in the vault, set upon a table adjacent to the vault, in the cashier's room, and searched for the bank statement, and then was put back into the vault, without any papers having been removed therefrom.

The testimony negatives any inference that the bonds may have been lost or mislaid by any person or employee, for the record shows that none of them, in the course of his duty, removed the bonds. However, because of their very nature, they must have been removed by human agency. As has been said, they were not removed in the course of business nor had they been carelessly handled by anyone, so that no inference of misplacement or destruction appears. The vault was small, and it seems extremely improbable that government bonds, payable to bearer, would be misplaced in any file outside of the vault. The inference is convincing from the manner

in which the bonds were handled and the fact that 22 people had access to them, that the bonds were stolen. It is true that such an inference is drawn from circumstantial evidence, but under the authorities in Michigan and throughout the country generally, this is considered sufficient to submit the case to the jury. *Emery* v. *Ocean Accident & Guarantee Corp.,* 209 Mich. 295, and cases cited therein at page 301; *Sowden* v. *United States Fidelity & Guaranty Co.,* 122 Kan. 375 (252 Pac. 208); *Fidelity & Casualty Co. of New York* v. *Wathen,* 205 Ky. 511 (266 S. W. 4, 41 A. L. R. 844); *McDuff* v. *General Accident, Fire & Life Assurance Corp.,* 47 R. I. 172 (131 Atl. 548); *Miller* v. *New Amsterdam Casualty Co.,* 94 N. J. Law, 508 (110 Atl. 810). Also see annotations in 41 A. L. R. 846, 44 A. L. R. 471, 54 A. L. R. 467, and cases therein cited.

Judgment affirmed, with costs to plaintiff.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, EDWARD M. SHARPE, and POTTER, JJ., concurred.

The late Justice NELSON SHARPE took no part in this decision.