**Alvin LONG and Winifred McKeon, Appellees,**

v.

**GLIDDEN MUTUAL INSURANCE ASSOCIATION and Sac Farmers Mutual Insurance Association, Appellants.**

**No. 56051.**

Supreme Court of Iowa.

Feb. 20, 1974.

Ronald H. Schechtman, Carroll, for appellant.

David E. Green, Carroll, for appellees.

McCORMICK, Justice.

Defendants appeal judgment in a law action tried to the court allowing plaintiffs theft insurance recovery for loss of 400 bushels of soybeans. The sole issue is the sufficiency of evidence to support trial court's finding the loss was caused by theft. We affirm.

Trial court findings of fact in a law action are binding on us if supported by substantial evidence. We view the evidence in its most favorable light to sustain those findings. Where, as here, circumstantial evidence is relied on, it must be sufficient to make the theory asserted reasonably probable, not merely possible, and more probable than any other theory based on such evidence; however, it is generally for the trier of fact to say whether circumstantial evidence meets this test.

Plaintiff Alvin Long leases a Carroll County farm owned by plaintiff Winifred

McKeon on a crop share basis. Long was insured against crop theft by defendant Sac Farmers Mutual Insurance Association and McKeon was similarly insured with defendant Glidden Mutual Insurance Association.

Trial court found Long harvested about 3000 bushels of soybeans from the McKeon land in 1971 and put them in three overhead bins of a corn crib on the farm. During February 1972 Long inspected the granary and noted the bins were full. On March 7, 1972, while preparing to deliver the beans to market, Long discovered one of the bins .. ⁿⁿ bushels short. He immediately notified h.. insurance agent and the sheriff. Investigatⁱⁿⁿ disclosed no evidence of tire marks or spilled beans at the scene. A hard-surfaced driveway extended from the road to the crib. The building was unlocked. Beans could be unloaded by gravity through a spout which would lower to within a foot of a wagon or truck box. Trial court concluded the beans were stolen by a thief using a truck which entered the crib alleyway from the driveway.

In denying coverage of the loss defendants rely on a provision common to their policies:

"  *   *   *  Loss by theft of insured personal property shall require substantial proof of theft by the insured. No coverage shall apply to loss caused by or resulting from mysterious disappearance or to loss discovered through inventory, or to loss by other unaccountable shortages."

Two questions are presented by this appeal. Did plaintiffs offer substantial proof of theft? Did defendants prove coverage was excluded as a matter of law?

■■■ I. *Plaintiffs' evidence.* Under the law and policy terms plaintiffs had the burden to present substantial evidence the beans were lost through theft. Cole v. Hartford Acc. & Ind. Co., 242 Iowa 416, 46 N.W.2d 811 (1951); 21 Appleman, Insurance Law and Practice, § 12238 at 180

(1962). Circumstantial evidence may be sufficient. Kroloff v. Southern Surety Co., 197 Iowa 1244, 198 N.W. 629 (1924).

■■■ The term "theft" is not defined in the policy. It thus has its popular meaning as a word of general and broad connotation covering any wrongful appropriation of another's property to the use of the taker. Fidelity & Casualty Co. of New York v. Wathen, 205 Ky. 511, 266 S.W. 4 (1924); 5 Appleman, Insurance Law and Practice, supra, § 3171 at 490–491; see Rodman v. State Farm Mutual Automobile Ins. Co., 208 N.W.2d 903, 905–906 (Iowa 1973). An insured need not prove the identity of the thief. Weir v. Central Nat. F. Ins. Co., 194 Iowa 446, 189 N.W. 794 (1922).

■■■ Proof of theft requires more than proof of mere disappearance. But an inference of theft is justified when property disappears without the knowledge or authority of its owner in circumstances tending to show it was not accidentally mislaid or lost and did not stray by itself. See, e. g., Weir v. Central Nat. F. Ins. Co., supra (automobile disappeared from repair shop); Sowden v. United States Fidelity & Guaranty Co., 122 Kan. 375, 252 P. 208 (1927) (jewelry disappeared from the top of a chiffonier in plaintiff's home).

■■■ The soybeans were of a quantity and bulk not readily susceptible to being accidentally mislaid or lost. See Hayward v. Employer's Liability Assur. Corporation, 214 Mo.App. 101, 257 S.W. 1083, 1084 (1924) (theft of liquor—"The property here is of bulk and proportion that could not easily be lost or misplaced."). Further, unlike livestock, soybeans will not stray away by themselves. Cf. Gifford v. M. F. A. Mutual Insurance Co., 437 S.W.2d 714 (Mo.App.1969) (cattle); Raff v. Farm Bureau Insurance Co. of Nebraska, 181 Neb. 444, 149 N.W.2d 52 (1967) (hogs).

Absence of tire marks, spillage and physical indicia of forcible entry in this case is not inconsistent with a finding of theft.

Unfortunately, the beans were stored in such a way they could be stolen without leaving a sign of entry.

There was sufficient circumstantial evidence to allow the trier of fact to find it reasonably probable, and more probable than any other theory based on the evidence, that the 400 bushels of beans were taken from the granary in late February or early March 1972 by some person for his own use without the consent of plaintiffs. Hence there was substantial proof of theft.

II. *The exclusion.* Defendants rely on the policy provision excluding coverage of loss caused by mysterious disappearance, inventory shortage, or other unaccountable shortage. They overlook the fact an insurer has the burden to prove the applicability of a policy exclusion. Rich v. Dyna Technology, Inc., 204 N.W. 2d 867, 871 (Iowa 1973). The insured is not required to negate the exclusion in order to present a prima facie case of theft. Jewelers Mutual Insurance Company v. Balogh, 272 F.2d 889 (5 Cir. 1959). Once the insured has offered substantial evidence of theft the burden is on the insurer who asserts the exclusion to prove the loss was caused by an excluded event. 21 Appleman, Insurance Law and Practice, supra, § 12238 at 182; 46 C.J.S. Insurance § 1359 at 561.

Trial court found plaintiffs' loss was caused by theft rather than an excluded event. This finding is supported by substantial evidence. Defendants did not establish their defense as a matter of law. Trial court's judgment must be sustained.

Affirmed.

All Justices concur except REES, J., MOORE, C. J., and UHLENHOPP, J., who dissent.

HARRIS, J., takes no part.

REES, Justice (dissenting).

I find myself unable to agree with the majority, and dissent.

I. The majority ignores what to me appears to be a very significant body of evidence in the record.

Plaintiff Long testified that he had planted 100 acres of land to beans, and that he harvested a crop averaging 30 bushels per acre, or an aggregate of 3000 bushels. A witness, Clausen, testified he combined the beans and that they averaged about 30 bushels per acre, although he admitted such was an approximation and the yield could have varied two bushels either way. Long testified that during the crop year 1971 he had suffered some hail damage to his bean crop, and that he had about a 35 percent loss for which he recovered on a policy of hail insurance, and he further estimated that without the hail the beans would probably have produced 40 bushels per acre. I believe it is significant that the estimated crop without the hail damage would have, according to the testimony of the plaintiff, yielded 40 bushels per acre, or an aggregate of 4000 bushels, and that by his own testimony his crop was minimized by the hail loss to the extent of 35 percent thereof, and that by his own testimony therefore the bean crop would not have yielded more than 65 percent of the 4000 bushels or a net of 2600 bushels, which is the exact amount of beans which were available for disposition. Long testified he sold 2500 bushels and kept 100 bushels of beans for seed.

Long further testified that he found no evidence of theft or larceny of the beans, only that the beans were gone. The deputy sheriff who investigated also testified that he found no evidence of theft or larceny, that he found no grain spilled in the driveway or in any area proximate to the crib or bin and no other evidence tending to show that the soybeans had been the subject of theft.

I think it is further significant that no one in investigating the alleged theft contacted the occupant of the dwelling house on the farm which was only 150 feet from the crib where the beans were stored. It appears that a tenant, Janssen, lived in the

farmhouse and used the driveway of the crib to park his pickup truck to keep it out of the weather. Neither the deputy sheriff who investigated the alleged larceny nor Long made any inquiry of Janssen as to any suspicious circumstances or concerning any knowledge Janssen might have had about any beans being removed from the crib.

I do not agree that there was sufficient substantial evidence adduced to permit the court as a trier of fact to find it was reasonably probable, and more probable than any other theory based on such evidence, that any beans were taken from the granary in late February or early March by some person for his own use without the consent of the plaintiffs.

I recognize our review of the facts is limited to determining whether the trial court's findings of fact are supported by substantial evidence and that if they are so supported they are binding upon us. Rule 344(f)(1), Rules of Civil Procedure.

We may not, however, abdicate our responsibility to review the record to determine the sufficiency of the evidence to provide support for the trial court's findings of fact.

I am unable to find from the record there was substantial proof of theft.

II. Nor am I able to agree with the majority that "theft" is not defined in the policy. The majority assumes the policy clause which is set out in its opinion is an EXCLUSION clause and that therefore the insurer has the burden of proof. In my judgment the clause referred to is essentially a definition of "theft". Contrary to the conclusion of the majority that "theft" is not defined in the policy, the clause referred to defines "theft", and distinguishes it from "mysterious disappearance", and therefore the broad definition of theft which usually applies and which the majority relies on does not apply here. Otherwise we would read said clause out of the policy.

In Raff v. Farm Bureau Ins. Co. of Neb., 181 Neb. 444, 149 N.W.2d 52, 54, the court said:

" * * * The provisions material to this risk are as follows: '(f) Theft and overturn. This insurance is extended to include direct loss by theft (but excluding escape, mysterious disappearance, inventory shortages, wrongful conversion and embezzlement), and overturn. * * * *' "

Continuing at page 55 of 149 N.W.2d:

"In popular usage, the word 'theft' is another name for 'larceny'. As a general rule, however, the term as used in an insurance policy is not necessarily synonymous with larceny, but may have a much broader and more inclusive meaning. It could cover pilferage, swindling, embezzlement, conversion, and other unlawful appropriations as well as larceny. Here, however, it is apparent that the term is used in a much more restricted sense than is usually the case. While it is not necessary to arrive at a precise definition herein, it is evidence 'theft' must be construed to mean something other than escape, mysterious disappearance, inventory shortage, wrongful conversion, or embezzlement, because these are specific exclusions in the policy."

So, as in the matter before us, the term "theft" is not used in the broad sense, but means something other than mysterious disappearance, inventory loss or unaccountable shortage. Therefore this is not a case of placing the burden of proof on the insurer to prove an *exclusion;* it is a case where the insured is required to prove he comes within the term "theft" which does not embrace or encompass mysterious disappearances. Therefore in any case where an insured's evidence shows mysterious disappearance, as the evidence does here, plaintiff has not established his own case in the first instance. To hold otherwise completely nullifies the clause and writes the same out of the policy.

Under the rationale of the majority it would be difficult to envision a factual situation where a mysterious disappearance could be established.

The plaintiffs have not established in the first instance they lost any beans, in any manner. In the second place, they did not establish the beans, if any were missing, were the subject of theft or that the policies of the defendants indemnified them under the circumstances and the evidence in the record before us.

I would reverse the trial court.

MOORE, C. J., and UHLENHOPP, J., join this dissent.