# IN THE COURT OF APPEALS OF IOWA

No. 16-0170
Filed February 8, 2017

**SALEM UNITED METHODIST CHURCH OF CEDAR RAPIDS, IOWA,**
Plaintiff-Appellant,

**vs.**

**CHURCH MUTUAL INSURANCE COMPANY,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

Insured appeals the district court's entry of a judgment notwithstanding the verdict in a breach of contract case. **AFFIRMED.**

William H. Roemerman of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellant.

Robert B. McMonagle of Lane & Waterman L.L.P., Davenport, for appellee.

Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

This insurance coverage dispute arises out of damage to Salem United Methodist Church (hereinafter "Salem") occurring during the Cedar Rapids flood of 2008. At issue is whether damage to the church basement was the result of sewage backup and/or flood and consequently whether the loss was covered or excluded. A jury returned a verdict in favor of Salem in the amount of $705,765.07. On appeal, this court vacated the judgment and remanded the matter for new trial. *See Salem United Methodist Church v. Church Mut. Ins. Co.*, No. 13-2086, 2015 WL 1546431, at *6 (Iowa Ct. App. Apr. 8, 2015). This court concluded the insurance policy excluded coverage for "damages that are concurrently caused by a covered cause—such as a sewer backup—and an uncovered cause—such as flooding." *Id.* at *3. This court further concluded the district court erred in instructing the jury to the contrary. *See id.* This court remanded the case for a new trial. *See id.* at *6. Following remand, a jury again returned a verdict in favor of Salem, this time in the amount of $717,000. Church Mutual moved for judgment notwithstanding the verdict, arguing it was undisputed the cause of loss was the flood and consequently the loss was excluded. The district court granted the motion, and Salem timely filed this appeal.

I.

"We review a district court's grant of a judgment notwithstanding the verdict for correction of errors at law." *Wieseler v. Sisters of Mercy Health Corp.*, 540 N.W.2d 445, 448 (Iowa 1995); *see* Iowa R. App. P. 6.907. The court views

the evidence "in the light most favorable to the party against whom the motion is directed." *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 541 (Iowa 1997).

> Simply put, we ask, was there sufficient evidence to generate a jury question? These are the same principles that the district court is bound to follow on a motion for directed verdict.
> Under this view of the evidence, if there is substantial evidence to support the claim or defense, the motion for directed verdict or judgment notwithstanding the verdict should be denied. Conversely, without such evidence, a directed verdict or judgment notwithstanding the verdict is appropriate. Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion.

*Johnson v. Dodgen*, 451 N.W.2d 168, 171 (citations omitted).

## II.

We begin our analysis with the burden of proof. When an insured seeks to enforce a provision of an insurance policy, "the burden of proof initially is on the insured to prove that both the property and the peril were covered by the terms of the policy." *Hometown Plumbing & Heating Co. v. Secura Ins. Co.*, No. 11-0309, 2012 WL 1245755, at *4 (Iowa Ct. App. Apr. 11, 2012); 17A *Couch on Insurance* § 254:11 (2016) ("Generally speaking, the insured bears the burden of proving all elements of a prima facie case including the existence of a policy, payment of applicable premiums, compliance with policy conditions, the loss as within policy coverage, and the insurer's refusal to make payment when required to do so by the terms of the policy."). Once the insured has established a prima facie case, "[t]he burden of proving that coverage is excluded by an exclusion or exception in the policy rests upon the insurer." *W. Bend Mut. Ins. Co. v. Iowa Iron Works, Inc.*, 503 N.W.2d 596, 598 (Iowa 1993); *see Long v. Glidden Mut. Ins. Ass'n*, 215 N.W.2d 271, 274 (Iowa 1974) ("[A]n insurer has the burden to

prove the applicability of a policy exclusion. The insured is not required to negate the exclusion in order to present a prima facie case." (citations omitted)); 17A *Couch on Insurance* § 254:12 ("Until a prima facie case of coverage is shown, the insurer has no burden to prove a policy exclusion. The insurer bears the burden of proving the applicability of policy exclusions and limitations or other types of affirmative defenses, in order to avoid an adverse judgment after the insured has sustained its burden and made its prima facie case."). In both cases, the standard of proof is preponderance of the evidence, absent any higher burden required by statute. *See Hometown Plumbing & Heating Co.*, 2012 WL 1245755, at *4.

We turn to the language of the policy at issue. Here, under the header "EXCLUSIONS," the policy stated in part:

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . . .
> g. Water.
> (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
> (2) Mudslide or mudflow,
> (3) Water which backs up through sewers or drains except as provided under F. Additional Coverage – Back Up Through Sewers and Drains.
> (4) Water under the ground surface pressing on or flowing or seeping through:
> (a) Foundations, walls, floors, or paved surfaces;
> (b) Basements, whether paved or not; or
> (c) Doors, windows, or other openings.

The policy did provide additional coverage:

> F. ADDITIONAL COVERAGE – BACK UP THROUGH SEWERS AND DRAINS
> Subject to all other terms and conditions of this policy, we will pay for direct physical loss or damage to Covered Property

caused by back up of water or sewage through sewers or drains only if caused by an event away from the described buildings and when the damage is not caused by flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not, and which did not enter the building through foundations, walls, floors, windows, cracks, roofs, or through other openings of the building.

Sewer or water damage occurring as a result of, either before or after, the excluded flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not, and entering the building through foundations, walls, floors, windows, cracks, roofs, or through other openings of the building is not covered.

This ADDITIONAL COVERAGE – BACK UP THROUGH SEWERS OR DRAINS will not increase the Limits of Insurance provided in this Coverage Part.

The law regarding the interpretation and construction of insurance policies is well established and need not be repeated herein. *See Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015). In our prior decision related to this case, this court determined the flood exclusion language was clear and unambiguous:

The exclusion for flood damage is clear. The policy also unambiguously excludes coverage for damages that are concurrently caused by a covered cause—such as sewer back up—and an uncovered cause—such as flooding by its language, "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

*Salem United*, 2015 WL 1546431, at *3; *see also United Fire & Cas. Co. v. Iowa Dist. Ct. for Sioux Cty.*, 612 N.W.2d 101, 103 (Iowa 2000) (discussing the law-of-the-case doctrine). The jury was correctly instructed in accord with our prior decision.

We agree with the district court that there was no question of fact for the jury because it was undisputed the flood was a direct or indirect cause of

damage to the church basement. A member of the church's building committee testified the sewer backup was caused by the flood:

> Q. So, as I understand it, Salem's position is that Salem suffered damage from the backup of water or sewage through sewers or drains?
> A. Correct.
> Q. And the backup was caused by an event away from the premises?
> A. Yes.
> Q. And would you agree that the event away from the premises that caused the backup would be the flood of June 11 and 12, 2008?
> A. From hydraulic pressure, yes. Yes. Correct.

Salem called Richard Ransom, an engineer, to serve as an expert witness. He testified as follows:

> What's going here is that as this Time Check area is being inundated, because there's houses up there, the water is entering those houses plus it's flooding the streets, so that water is getting into the sanitary sewer system, both through the houses that it's flooding, as well as—we've always known there's slight leaks in the sewer systems from manhole covers and those things, so that as that area became flooded, then it began to get into the sanitary sewer system with more water than the system could actually handle.
> And so that starts to flow downstream in that system and begins to—what we describe as surcharge the system, so that there's more water in the system than it can actually handle by gravity and it begins to create pressure inside the pipes.

Ransom stated normally, where there are not flood conditions, the sewage pipes will not run full and water will flow downstream. But under the conditions of June 11 and 12, the floodwaters altered the way the system was supposed to operate. Ransom was asked on cross examination about the flood's contribution to the back up on Salem's property:

> Q. Wouldn't you agree that if the Cedar River had not overflowed its banks on the 11th of June, 2008, there would not have been a backup into Salem's basement?

A.  I would agree with that.
Q.   And the flood was the one and only cause of the backup, correct?
A.  To the best of my knowledge, yes.

Finally, Mike Kuntz, a utilities and environmental manager for the city of Cedar Rapids, testified on behalf of Church Mutual.  He testified that backflow in the pipes was caused by floodwaters entering the sanitary sewer system.

Notwithstanding the state of the evidence, Salem argues judgment notwithstanding the verdict was not proper because causation is always a question of fact for the jury.  While Salem correctly states causation, generally, is a question of fact for the jury, this presupposes there is evidence from which the jury could make a particular finding of fact.  Here, there was no evidence from which the jury could infer the loss was caused by something other than the flood.  The policy explicitly excluded flood damage from coverage.  While the policy did provide additional coverage for sewer backup, such coverage was not applicable where the sewer backup "occur[ed] as a result of, either before or after, the excluded flood."  Here, it was undisputed the flood either directly caused the damage to the basement or indirectly caused the damage by causing the sewer to backup.  No reasonable mind could reach a contrary conclusion.

Salem also urges this court to adopt a per se rule and hold judgment notwithstanding the verdict should never be granted where causation is at issue and the jury reached a verdict adverse to the party assigned the burden of proof on the issue of causation.  Salem argues "a jury's negative finding on a question of cause is conclusive." (Emphasis in original.)  Salem reasons judgment

notwithstanding the verdict is not proper because the jury could have simply determined the party failed to meet its evidentiary burden.

We reject Salem's request to adopt such a rule. First, the cases cited by Salem do not stand for the proposition that causation should always and automatically be left to the jury. In the cited cases, the court was still required to analyze the evidence to determine if substantial evidence existed so as to create a jury question on the issue of causation. *See Johnson v. Junkmann*, 395 N.W.2d 862, 864–65 (Iowa 1986) ("We conclude substantial evidence exists from which the jury reasonably could have found Junkmann's failure to keep her automobile and its wheels parallel to the center line constituted fault under the circumstances existing at the time of the accident."); *Pedersen v. Kuhr*, 201 N.W.2d 711, 713 (Iowa 1972); *Ackerman v. James*, 200 N.W.2d 818, 826 (Iowa 1972). Second, the relevant standard is set forth by rule. Iowa Rule of Civil Procedure 1.1003 sets forth the relevant standard governing the motion for judgment notwithstanding the verdict:

> On motion, any party may have judgment in that party's favor despite an adverse verdict, or the jury's failure to return any verdict under any of the following circumstances:
> (1) If the pleadings of the adverse party fail to allege some material fact necessary to constitute a complete claim or defense and the motion clearly specifies such failure.
> (2) If the movant was entitled to a directed verdict at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then either grant a new trial or enter judgment as though it had directed a verdict for the movant.

The rule provides the motion should be granted if the movant was entitled to directed verdict. The rule does not exempt from its operation any particular issue or issues. The rule also does not distinguish between movants based on

whether the movant was assigned the burden of proof. We decline to graft these exemptions and distinctions onto the rule.

The purpose of judgment notwithstanding the verdict "is to allow the district court an opportunity to correct any error in failing to direct a verdict." *Easton v. Howard*, 751 N.W.2d 1, 4 (Iowa 2008). Regardless of who has the burden of proof, the relevant inquiry is "was there sufficient evidence to generate a jury question?" *Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 617 (Iowa 1990); *see Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) ("In reviewing rulings on a motion for judgment notwithstanding the verdict, we simply ask whether a fact question was generated."); *McCloy v. Leisure Lake, Inc.*, No. 01-1908, 2003 WL 289117, at *1 (Iowa Ct. App. Feb. 12, 2003) ("In considering both motions [for directed verdict and for judgment notwithstanding the verdict], we inquire whether substantial evidence exists to support the plaintiff's claim, justifying submission of the case to the jury."); *Graves v. O'Hara*, 576 N.W.2d 625, 628 (Iowa Ct. App. 1998) ("A directed verdict is appropriate in cases where each element of the claim is not supported by substantial evidence."). While it is "true even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered," that is not the situation here. *Ackerman*, 200 N.W.2d at 824. The evidence is "so palpable, flagrant and manifest that reasonable minds may fairly reach no other conclusion" than the floodwaters were a direct or indirect cause of all of Salem's claimed damages. *Id.*

III.

For the above-stated reasons, we affirm the judgment of the district court.

**AFFIRMED.**