## McKenzie v. Travelers' Fire Insurance Company of Hartford, Conn.

(Decided May 22, 1931.)

J. J. FELTON, S. D. LEWIS and H. H. DENTON for appellant.

C. C. WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE BRATCHER—Affirming.

On the 20th day of June, 1929, the appellee, the Travelers' Fire Insurance Company of Hartford, Conn., issued to the appellant, Joe B. McKenzie, an insurance policy upon a Dodge automobile. The policy issued covered the following risks, as set out in item 5 of said polcy:

"Item 5. This insurance is against only such and so many of the Perils named in the Schedule below, as are indicated by a specific premium in

writing set opposite thereto. The limit of this Company's liability against each of such Perils shall be as stated in the General Conditions of this Policy, not exceeding, however, the limits stated in said Schedule.

| | Perils<br>Each as Defined on<br>Page 2 of the Policy | Limit of<br>Liability | Net<br>Rates | Premiums |
|---|---|---|---|---|
| A | Fire, Lightning and Transportation<br>Theft, Robbery and Pilferage<br>Broad Form | $600.00 | $1.30 | $7.80 |
| B | Insert "Broad" or "restricted" | $600.00 | $ .65 | $3.90 |
| C | Tornado, Cyclone, Windstorm, Hail, Earthquake, Explosion and Water Damage | Not Covered —— Not Covered | | |
| D | Collision or Upset | Actual Cash Value in Not Covered —— Not Covered<br>Excess of $———. Deductible | | |
| E | Property Damage | Not Covered —— Not Covered | | |
| | | Total Premium | | $11.70" |

On page 2 of the policy, under what is termed "Definition of Perils," section B, the policy reads:

"Theft, Robbery and Pilferage (Broad Form):

"Theft, Robbery and Pilferage, excepting by any person or persons in the Assured's household or in the Assured's service or employment, whether the theft, robbery or pilferage occurs during the hours of such service or employment or not; and excepting loss suffered by the Assured from volun-

tary parting with the title and/or possession, whether or not induced so to do by any fraudulent scheme, trick, device or false pretense or otherwise; and excepting in any case, other than the theft of the entire automobile described herein, the theft, robbery or pilferage of tools or repair equipment.

"This Policy does not insure against the wrongful conversion, embezzlement or secretion by a mortgagor, vendee lessee or other person in lawful possession of the insured property under a mortguage, conditional sale, lease or other contract or agreement, whether written or verbal."

During the month of August, 1929, one Richard Mullins, without the knowledge or consent of McKenzie, took this car from the Mt. Vernon Motor Company's garage in Mt. Vernon, Ky., and while in his custody wrecked it. The car was sold by McKenzie for $150. Proper notice of the damage was given to the insurance company and payment on the policy denied. On the 11th day of March, 1930, this petition was filed in the Rockcastle circuit court, pleading the terms of the insurance policy, and averring that the taking by Mullins constituted theft of the car, and asking for a judgment in the sum of $600. The insurance company filed their answer, and, after denying the allegation of the plaintiff's petition, affirmatively averred that Mullins took said car from the garage of the Mt. Vernon Motor Company with the approval of the plaintiff; that, while it is true that Mullins was not a member of the plaintiff's household, he was in the habit of taking plaintiff's car and using same with the plaintiff's knoweldege and consent. By reply these affirmative allegations were traversed. On the 15th day of September, 1930, a trial by jury was had upon the issues. At the conclusion of all the testimony, the defendant moved the court for peremptory instructions, which motion was sustained, and jury directed to, and did, return the following verdict: "We, the Jury, find for the defendant, Ben Davidson Foreman." Upon this verdict a judgment was entered dismissing plaintiff's petition. On the 17th day of September, motion and ground for a new trial was filed, which was overruled. From that order the appellant has appealed. To reverse the judgment, the appellant relies upon what is stated to be the error of court in sustaining appellant's

motion for peremptory instructions and the judgment upon that verdict.

It is admitted by all witnesses that Mullins took the car from the garage of the Mt. Vernon Motor Company without the knowledge or consent of Joe B. McKenzie. Mr. McKenzie testified that he refused to loan the car to Mullins that morning. He had told Otis Gooch, the manager of the garage, to let no one have his car; that he had no business connections with Mullins; that he was not in his employ and not a member of his family. He stated that the car was worth $800. Mr. Gooch stated that he was the manager of the Mt. Vernon Motor Company's garage; that he had instructions from Joe B. McKenzie to let no one have his automobile. On the evening the car was taken, Mullins came to the garage, and asked him to let him have the car, saying he could not find McKenzie; that he knew he would let him have it; that he wanted to use the car. Gooch says he told him of the instructions of McKenzie to let no one have it; that he refused to let him have the car; says that he went into the office of the garage, and that Mullins went to the car, got in it, and drove it away. The car was returned the next morning to the garage badly wrecked. One other witness testified that he was present and heard the above conversation. The defendant Mullins testified that he and J. B. McKenzie had been friends for a number of years and had worked together. He said that he had used McKenzie's car five or six times; that McKenzie had used his car about that many times. He said that he desired to make a trip down to Crab Orchard; that to make that trip he took McKenzie's car; that while he had it in his possession it left the road, struck a telephone pole, and was damaged; that he had no intentions of stealing the car; that he took it because he felt confident that McKenzie would not object; that it never occurred to him that he was stealing the car; he had heretofore used the car belonging to the plaintiff, and that plaintiff had used his car; that he brought the car back that night, after the garage had closed, and left it at the front door of the Mt. Vernon Motor Company's garage. That is all the evidence introduced in the trial of this case.

The whole question here for determination is, Did the taking of the car by Mullins constitute theft within the meaning of the policy of insurance? Theft is defined in 38 Cyc. 272, as "the felonious taking and carrying

away of the personal property of another with the intent to convert it to the use of the taker without the consent of the owner; the fraudulent taking of property with intent to deprive the owner of the value of the same and to appropriate it to the use of the person taking it." In the case of Frederick R. Van Vechten v. American Eagle Fire Insurance Co., 239 N. Y. 303, 146 N. E. 432, 38 A. L. R. 1115, theft under a contract of insurance using the very phraseology, "theft, robbery, or pilferage," the court said: "Theft under this contract is theft as common thought and common speech would now image and describe it."

In view of that definition, the term "theft" in a contract of insurance has no different meaning to "theft" as usually defined. To constitute theft, it is necessary that there be a taking of the property; that taking must be without the consent of the owner, coupled with an intention on the part of the taker to convert it to his own use and to deprive the owner of his property right therein. We find no case from this court dealing with the very terms "theft, robbery and pilferage" in a contract of insurance, except the case of Federal Insurance Co. v. Hiter, 164 Ky. 743, 176 S. W. 210, L. R. A. 1915E, 575 infra. These contracts have been before the court and their terms defined in a number of other jurisdictions. In Phoenix Assurance Co. v. Eppstein, 73 Fla. 991, 75 So. 537, 538, L. R. A. 1917F, 540, the Florida Supreme Court said:

"One cannot be convicted of either theft, robbery, or pilferage unless he had the intent to steal. And we know of no authority for giving any different meaning to these words in the contract of insurance wherein it is stipulatd that the company will be liable for loss or damage to an automobile, resulting from theft, robbery, or pilferage. Under this contract, if the thief carries away a machine with intent to steal it, and it is never recovered and loss occurs, the owner may recover the full value of the automobile. If the thief be apprehended and the machine recovered, then the owner is entitled to recover for whatever damage has been done the machine, . . . but in both cases it must appear that the person taking the machine intended to steal it."

Further in this opinion the court said, quoting from an earlier case, Valley Mercantile Co. v. St. Paul Fire & Marine Ins. Co., 49 Mont. 430, 143 P. 559, L. R. A. 1915B, 327, Ann. Cas. 1916A, 1126:

> "To constitute the crime of larceny, the intent which accompanies the act of taking must be the criminal intent to permanently deprive the owner of his property, and without which the taking would be a bare trespass or civil injury."

The rule seems to be universal that, under policies with identically the same phraseology as the one under consideration, no recovery can be had for damages to the property unless the taking was such as to legally constitute theft; that is, a taking with the criminal intent of appropriaing it to the taker's use. Ledvinka v. Home Insurance Co. of New York, 139 Md. 434, 115 A. 596, 19 A. L. R. 167; Rydstrom v. Queen Insurance Co., 137 Md. 349, 112 A. 586, 14 A. L. R. 212, Hessen v. Iowa Automobile Mutual Insurance Co. 195 Iowa, 141, 190 N. W. 150, 30 A. L. R. 657; Royal Insurance Co. v. Jack, 113 Ohio St. 153, 148 N. E. 923, 46 A. L. R. 529. Each of the above-cited cases deals with contracts of insurance in which the very terms "theft, robbery and pilferage" are used and are almost identical with the one under consideration here. Reference to these cases and the A. L. R. annotations is made for a complete, thorough, and illuminating discussion of this character of insurance policies. The appellants cite the cases of Fidelity & Casualty Co. v. Wathen, 205 Ky. 513, 266 S. W. 4, 5, 41 A. L. R. 844; Federal Insurance Co. v. Hiter, 164 Ky. 743, 176 S. W. 210, L. R. A. 1915E, 575. In the Wathen Case, the policy was issued against burglary, larceny, or theft. They argue that by the rule announced therein "theft," robbery and pilferage" as used in an insurance contract comprehends any unlawful and wrongful deprivation of the property of another. The court in discussing theft in that case said:

> "Theft is a broader term than larceny and includes any wrongful deprivation of property of another. Acts constituting embezzlement or swindling may properly be so called, says Bouvier. Larceny is the felonious taking of property of another without his consent and against his will, with the intent to convert it to the use of the taker."

In the Federal Insurance Co. v. Hiter, supra, the appellees were automobile dealers in Louisville and held a policy of insurance on a new Henderson special roadster which he had in his place of business, for $1,500. He had in his employment a young man by the name of Yost. He notified Yost a week in advance that on the next Saturday he would let him go. On Saturday, Yost was turned off and terminated his employment. That afternoon Yost reported to him that he desired to go to Indianapolis to seek other employment and requested the use of the Henderson roadster to make the trip, promising that he would return it within a given time. The car was loaned to him. Yost drove it to Indianapolis, tried to sell it, then went on with it to the state of Missouri, where six or eight weeks later it was found in a badly battered and damaged condition. This court affirmed a judgment in favor of Hiter on the showing that, after the specified purpose for which it was loaned had been accomplished, that is, the trip to Indianapolis, the subsequent acts of Yost, his attempt to sell the car, his failure to return it, amounted to theft. Therefore the rule announced in this case and the Fidelity & Casualty Case above is not different to the rule established in other jurisdictions.

In view of the authorities above cited, perceiving no error of the court in sustaining the motion for peremptory instructions, the judgment is therefore affirmed.