16241

GEIGER v. AETNA INS. CO.

(54 S. E. (2d) 549)

*Messrs, Joseph L. Nettles, Jr.,* of Columbia, *and Willcox, Hardee, Houck & Palmer,* of Florence, *for Appellant,*

*Messrs. McEachin & Townsend,* of Florence, *for Respondent,*

July 28, 1949.

TAYLOR, Justice.

This appeal comes from the Civil Court of Florence County, wherein respondent instituted an action for the alleged breach by the defendant, of the provisions of two policies of insurance, in refusing to make payment on account of the alleged theft of plaintiff's automobile and personal property therein.

Defendant's answer denied that the car in question was stolen within the terms of the policy, and set up as a further defense, that respondent breached a condition of the policies in that he failed to cooperate with appellant in seeking recovery of the car and its contents.

The jury returned a verdict for the plaintiff in the sum of $1,385.81 on the policy covering the car, and $109.66 for the personal property, together with six per cent. interest from the date of loss. Timely motions were made by appellant for a directed verdict, and judgment for the defendant notwithstanding the verdict, which were refused.

Appellant now appeals to this court contending: First, that the evidence shows conclusively that plaintiff breached the condition of his policies requiring him to cooperate with the appellant; and second, that the evidence does not permit the inference that the car was taken by theft within the terms of the policy. Since the terms of both policies are similar and the loss arose out of the same transaction, appellant chooses to treat the whole as one transaction and this court will do likewise in considering this appeal.

Respondent is District Manager in the State of South Carolina for the Anheuser-Busch Company. At the time the policies were issued he was married to one Mildred Ross Geiger. Respondent and his wife were separated in Septem-

ber, 1945, and divorced in April, 1946. No mention was made of any claim the wife had upon the car in the settlement between the two in the divorce proceedings.

In October, 1946, while respondent was in Walterboro, South Carolina, on business he parked his car about 6 o'clock in the afternoon near the hotel; returning at approximately 8 p. m., he found the car gone. Later respondent received the following telegram from his ex-wife:

"W. B. Geiger, Hotel Eutau

"On Advice Of My South Carolina Lawyers My Car Has Been Taken Care Of. Your Personal Things Will Be Sent To Hotel Columbia.

Mildred."

Whereupon, plaintiff reported to appellant that his car had been stolen, stating that he knew, in fact, that his ex-wife had taken it, and gave them such information as he had and that she might be located in Fitchburg, Massachusetts. As a result of this information the car was located and respondent was informed that his ex-wife, in fact, had taken it. Appellant then requested that respondent have issued a warrant for his ex-wife, charging her on the criminal side of the court with theft of the car.

Mrs. Geiger testified by deposition and admitted taking the car, but claiming it belonged to her. When the two were married he owned a Ford and she a Packard. Having no need for two cars the Ford was sold for $550.00, which sum was turned over to his wife who at that time owed her mother a balance of $290.00 on the Packard. He wrote her a check for this amount, clearing this indebtedness, which made a total of $840.00 paid to the wife for the Packard automobile, respondent contending that the total of $840.00 was to pay his wife for her car and that after such payments, regarded himself as the owner of the Packard and of the Buick which was subsequently bought, with the Packard being traded in, and of the Chrysler which was purchased in Florence, South Carolina, on which account he traded in the

Buick and of the Chrysler Royal Six 4-Door Sedan, the car in question, on which he traded in the first Chrysler, paying in each instance the cash difference required, the cash payments being drawn from the joint account in his and his ex-wife's names in St. Louis, Missouri. He further testified that his ex-wife put no money whatsoever into this account and that all of it was deposited by him. His ex-wife contends that some cash from stock dividends was placed in this account but respondent stated that all stock dividends were turned over to her mother; that she had no other funds, and made no deposits in this account. All of the cars purchased subsequent to the Packard were registered in the name of respondent. The evidence clearly shows that she made no claim to the automobile here involved at the time of the divorce and made no effort at any time to take same by proceeding on the civil side of the court.

The clause of the policy, under which respondent is charged with having refused to cooperate with appellant in recovering the car, appears as follows: "The insured shall cooperate with the company, and upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation, or incur any expense."

An examination of this provision reveals that he was required to cooperate with appellant by attending hearings, trials, securing and giving evidence, etc., in the conduct of suits. It further requires the cooperation of respondent and there is an abundance of evidence to the effect that he fulfilled this requirement by giving appellant such information as he had, in fact, there is no contention that he concealed any of the facts or failed to cooperate in any way, except that he refused to prosecute his ex-wife for the crime of theft. Prompt report and readiness to meet attack by the insured has not been questioned. See annotations, 98 ,A. L. R. 1465, 72 A. L. R. 1446.

This being a question of fact to be determined by the jury, it was properly submitted to them for their determination.

The next question to be considered is whether or not the taking of the car was theft within the terms of the policy.

"The word 'theft' as used in an automobile policy ■ has no different meaning than 'theft' as usually defined; and to constitute a theft it is necessary that there be a taking of the property without the consent of the owner coupled with an intention on the part of the taker to convert it to his own use and deprive the owner of his property rights therein. *McKenzie v. Travelers' Fire Ins. Co.*, 1931, 239 Ky. 227, 30 S. W. (2d) 239; *Allen v. Berkshire Mut. Fire Ins. Co.*, 105 Vt. 471, 168 A. 698, 89 A. L. R. 465."

And in *Gibson v. St. Paul Fire & Marine Ins. Co.*, 117 W. Va. 156, 184 S. E. 562, 563, wherein it was held that there was a theft, within the provisions of an automobile insurance policy, of the plaintiff's automobile by an employee of the public garage wherein the plaintiff stored his car, the Court said: "In such a situation, the question of whether the employee intended to steal the property is a jury question." *Pennsylvania Indemnity Fire Corp. v. Aldridge*, 73 App. D. C. 161, 117 F. (2d) 774, 133 A. L. R. 920.

Appellant contends that the car was taken from a brightly lighted place and under claim of right, therefore, such taking could not be termed theft within the terms of the policy. Whether or not such taking occurred in the nighttime or twelve noon is immaterial. The question is whether or not the taking was a theft within the meaning of the terms of the policy. The evidence is explicit that she took without the knowledge or consent of the owner and informed him of its whereabouts only after she had returned to Massachusetts. If her claim was bona-fide, all she had to do was resort to the Civil Courts of this State to protect her interest. This she chose not to do, but rather to take without the knowledge or consent of respondent and drive beyond the borders of this

state after carefully considering all of the circumstances.. She had employed an attorney in this state and had ascertained from respondent's employers what his itinerary was, knowing therefore in advance, where respondent would be at a given time.

In the case of *State v. Winters,* 83 S. C. 153, 65 S. E. 209, 210, this Court said: "But in this state the law is settled. In *State v. Kinman,* 7 Rich. [497], 503, the court quotes with approval the rule as laid down in 2 East P. C. § 93: "It may be laid down generally that, whenever the property of one man, which has been taken from him without his knowledge or consent, is found upon another, it is incumbent upon that other to prove how he came by it; otherwise the presumption is that he obtained it feloniously.' The force of the presumption was stated in similar language in * * * *State v. Garvin,* 48 S. C. 258, 26 S. E. 570."

Without reviewing the testimony further, suffice it to ■ say, that there was ample evidence to require the trial judge to submit to the jury the question of whether or not the taking was a theft within the meaning of the terms of the policy.

This court is, therefore, of the opinion that all exceptions should be dismissed and the judgment of the lower court affirmed and it is so ordered.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.