David Michael BEST, Appellant,

v.

**WEST AMERICAN INSURANCE COMPANY, Appellee.**

No. 2007–CA–002289–MR.

Court of Appeals of Kentucky.

Sept. 26, 2008.

Rehearing Denied Nov. 13, 2008.

Robert C. Bishop, Elizabethtown, KY, for appellant.

Marvin L. Coan, Louisville, KY, for appellee.

Before MOORE, NICKELL, and STUMBO, Judges.

## OPINION

MOORE, Judge.

David Michael Best appeals from the Hardin Circuit Court's order granting West American Insurance Company's motion for summary judgment and denying Best's motion for summary judgment. After a careful review of the record, we vacate and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Best entered into a handwritten contract with Steve Lazzarini and Diana Marsh (the Lazzarinis)[1] in November of 2004, providing that Best would purchase from the Lazzarinis property that included a 2003 Infiniti G35 vehicle, a 1994 Infiniti vehicle, furniture, and other household items for a total of $42,000 in cash. The cost of each individual item was not specified in the contract, but the contract stated that the $42,000 in cash was payable by December 15, 2004; that a deposit check of $39,000 was tendered on the date that the contract was signed; and that the tendered $39,000 check would be deposited on December 15, 2004, if Best had not paid cash for the property by that date.[2]

It is undisputed that Best received possession of the vehicles in November of 2004, and at some point in time he received most of the items in the contract.[3] However, he attests in his affidavit that he did not receive two sets of bedroom furniture,

---

1. After entering into the contract, Diana Marsh married Steve Lazzarini, and took his last name. Therefore, we will refer to the two of them as "the Lazzarinis."

2. The contract does not explain the discrepancy in purchase price between the $39,000 check and the $42,000 cash, or when the remaining $3,000 would have been due if the $39,000 check was deposited in lieu of cash.

3. It is likely that Best received the other items at the same time; however, this is not clear from the briefs nor the record.

which he claims have a value of $6,000. Diana disputes this, claiming Best received possession of everything in the contract.

Best did not pay $42,000 in cash by December 15, 2004, but the Lazzarinis did not cash the $39,000 check nor did they retrieve the items Best had taken under the contract.

Best obtained insurance on the two vehicles through West American. The insurance policy for the two vehicles included a provision stating that the vehicles were covered by loss due to theft. West American did not require any proof of ownership of the vehicles but nonetheless entered into an insurance contract for coverage of these vehicles and accepted premium payments for the insurance coverage. Moreover, West American paid damage claims twice on the vehicles.

Despite having received the vehicles in November of 2004, there is a dispute whether Best ever paid for the vehicles and other property included in the contract. Best avers in his affidavit that within ten days of Steve Lazzarini's request for payment via wire transfer to 4–D Development, Inc., Best wire transferred $36,504 to 4–D Development in June of 2005. Steve is the agent for service of process of that company. According to Best, because he did not receive all of the furniture listed in the agreement with the Lazzarinis, he deducted $6,000 from the $42,000 he owed them.[4]

Supporting Best's attestation in the record is an image of a cashier's check from Cashier's Checks E–Town, with a statement on the image "[t]he image shown below represents an official copy of the original document as processed by this institution." The cashier's check is dated June 7, 2005, made payable to Best and 4–D Development for $36,504. The "remitter" line on the cashier's check states that it is a "Construction Draw for D. Mike Best." (Capitalization changed). The back of the cashier's check looks as though it was endorsed by Best.[5] Below his endorsement, the check is stamped as follows: "Pay to the order of Pacific Western Bank[,] La Quinta, CA ... for deposit only[,] 4–D Development, Inc." (Capitalization changed). Best does not explain why he paid 4–D Development for the property, rather than paying the Lazzarinis personally. Nor does he explain why it is styled as a construction draw on his behalf. Nonetheless, it does have a stamp on the back providing for deposit only to 4–D Development's account.

There is nothing in the record to refute that Steve is the agent for service of process for 4–D Development in La Quinta, California. Diana's affidavit was notarized in La Quinta. However, no other affirmations have been made regarding the Lazzarinis' connections to 4–Development or whether the Lazzarinis personally received the wire transfer. Despite this, according to Best's affidavit, he paid in full for the property that he had actually received from the Lazzarinis pursuant to the contract, albeit late, via the wire transfer to 4–D Development. Consequently, he believed the payment to 4–D Development, pursuant to the instructions from Steve, was to fulfill his requirements under the contract. There is nothing to contradict this from Steve in the record.

Contrary to Best's affidavit, however, Diana provided an affidavit attesting that

---

4. We note that based on Best's value of the furniture of $6,000, he overpaid the Lazzarinis by $504. Best does not explain this discrepancy.

5. The handwriting on the back of the check is difficult to read, but it appears that Best's name is signed on the back of the check.

Best had not paid any money for the property listed in the contract and that Best received all the furniture listed in the contract. However, Diana does not reference the wire transfer to 4–D Development, nor what, if any, involvement, she and/or her husband have with that company.

Best and Diana dispute rightful ownership to the vehicles at issue. Regarding the 2003 Infiniti G35, Best has supplied the affidavit of Tammy Reece. Reece attests that Best purchased from Anthony's Auto Sales the wrecked 2003 Infiniti G35, VIN # JNKCV51E93M003822, and she attached a copy of the sales receipt showing Best purchased the vehicle. Best claims in his affidavit that Diana used "forged or falsified documents ... to illegally obtain an Ohio Certificate of Title for [Best's] 2003 Infiniti G35 vehicle." Best claims that when he purchased the 2003 Infiniti G35 vehicle from Anthony's Auto Sales, it was a salvage vehicle and he was provided with a Georgia Certificate of Title, identifying the vehicle as a salvage vehicle. This Certificate of Title is included in the record. According to Best's affidavit, his agreement with the Lazzarinis to purchase this vehicle was actually to purchase Diana's interest in it because she apparently provided some or all of the money for the purchase and/or rebuilding of this vehicle. In Best's affidavit he attests: "Diana [] and I both had invested some money into the rebuilding of this vehicle, with a goal of eventually selling it and splitting the proceeds between us." Regardless, Best steadfastly maintains in his affidavit and brief that he paid the Lazzarinis for the 2003 Infiniti G35, the other Infiniti vehicle, and property.

Despite his affidavit regarding title to the vehicles at issue, Best's sworn answers to interrogatories include that:

Do you admit that the 2003 and 1994 Infiniti automobiles referenced in the contract attached as Exhibit 1 were never titled in your name with the Commonwealth of Kentucky or in any other state from the date they were in your physical possession until the cars were allegedly repossessed by Diana Marsh and/or Steve Lazarini [sic]on or about October 8, 2005?

*Answer:* Yes.

Do you admit that the two automobiles referenced ... above were titled in the name of Diana Marsh even when they were in your physical possession?

*Answer:* Yes.

Regarding the 2003 Infiniti G35, Diana attests in her affidavit that she provided the money to Best to purchase that vehicle. She agrees with Best that they intended to rebuild the vehicle and sell it for a profit, to be divided between them. Diana attests that the car was always titled in her name because she alone provided the money to purchase it. She claims that when the car could not be sold, Best agreed to buy it.

Eleven months after Best and the Lazzarinis entered into their contract and over four months after the cashier's check was dated, Diana Lazzarini used self help to take possession of the two vehicles from Best in October of 2005.

Best was aware that Diana had taken the vehicles. Approximately two months later, Best informed his insurance company, West American, that the vehicles were missing. Best claimed that they had been stolen. He tried to have the police investigate the allegedly stolen vehicles but was told it was a civil matter.

After conducting an investigation into the alleged "theft" of the vehicles, West American denied Best's insurance claims on the basis that the vehicles had been properly repossessed by their true owner and, accordingly, there could not have

been a "theft within the common meaning of insurance coverage." Best subsequently filed his complaint in the circuit court, alleging that West American had improperly denied his insurance claims for the alleged theft of the vehicles, had not dealt in good faith with Best, and had violated the Kentucky Unfair Claims Settlement statute, Kentucky Revised Statute (KRS) 304.12–230. Both Best and West American filed cross motions for summary judgment. The circuit court denied Best's motion but granted West American's motion for summary judgment. It should be noted that neither Best nor West American joined the Lazzarinis as parties.

Best now appeals, contending that the circuit court improperly granted West American's motion for summary judgment. Specifically, Best alleges that there were issues of material fact concerning: (1) whether he had paid the Lazzarinis for all the contract items that had been sold to him; and (2) whether Diana had formed any criminal intent to steal the vehicles before she took them. West American has filed a response brief on appeal, wherein it contends, *inter alia*, that Best does not challenge on appeal the circuit court's conclusions that West American had not violated the Unfair Claims Settlement Practices Act and that West American had not acted in bad faith under the common law by denying Best's "theft" claims.

## II. STANDARD OF REVIEW

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 480 (Ky.1991). "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* Further, "the movant must convince the court, by the evidence of record, of the nonexistence of an issue of material fact." *Id.* at 482.

## III. ANALYSIS

### A. BEST'S ARGUMENT THAT WEST AMERICAN IMPROPERLY DENIED HIS THEFT CLAIMS

Best contends that the circuit court erred in granting West American's motion for summary judgment concerning Best's argument that West American had improperly denied his "theft" claims on the basis that the thefts had not occurred. Although the term "theft" is not defined in the insurance policy at issue,

> the term "theft" in a contract of insurance has no different meaning to "theft" as usually defined. To constitute theft, it is necessary that there be a taking of the property; that taking must be without the consent of the owner, coupled with an intention on the part of the taker to convert it to his own use and to deprive the owner of his property right therein.

*McKenzie v. Travelers' Fire Ins. Co. of Hartford, Conn.*, 239 Ky. 227, 39 S.W.2d 239, 240–41 (Ky.1931); *see also* KRS 514.030(1)(a). The rule is that, to recover for loss due to theft under an insurance policy that covers theft, "it must appear that the person taking the property intended at the time of the taking to steal it." *Fidelity & Guaranty Fire Corp. v. Ratterman*, 262 Ky. 350, 90 S.W.2d 679, 681 (Ky.1936).

■ The Third Edition of Couch on Insurance, § 157:25 provides, in pertinent part, as follows: "Where the person taking the automobile from the possession of the insured is, in fact, the rightful owner who is entitled to possession, there is by definition neither larceny under criminal law nor a theft within the coverage of an automobile theft policy." Accordingly, a theft does not occur when a person with a bona fide claim of right to a vehicle repossesses that vehicle from the insured who has possession of it. Although the issue at hand is one of first impression in Kentucky, the Georgia Court of Appeals has held that an insured may not recover under an insurance policy for theft of a vehicle when the vehicle that was in the insured's possession has been repossessed by someone with a bona fide claim of right to the vehicle, because a theft has not occurred. *See Cincinnati Insurance Co. v. Tire Master of Thomaston, Inc.*, 183 Ga.App. 64, 357 S.E.2d 812, 814 (1987).

■ While in theory we may agree with the Georgia Court of Appeals, in the present case, there are factual issues as to whether Diana had a bona fide claim of right to the vehicle. According to Best, he owned the vehicle pursuant to the contract with the Lazzarinis and he contends, via his affidavit, that he paid in full the amount owing on the contract, less the furniture he did not receive. Further, while he admits in his answers to interrogatories that Diana had title,[6] in his affidavit he claims she received title to the G35 Infinity vehicle by fraud or by forgery.

Thus, he contends Diana did not have a bona fide ownership stake in the G35 Infinity. Moreover, because he alleges that he paid for the vehicles, notwithstanding Diana's title to either or both vehicles, her taking of them constituted a theft as he owned them pursuant to a bona fide sales contract. He reasons, therefore, that West American should pay him for the alleged thefts pursuant to his insurance policy.

Under Kentucky law, as discussed previously, for a "theft" to occur, there must be a taking of property belonging to another with the intent to deprive that person of such property. *See* KRS 514.030(1)(a). "The adoption of KRS 186A.010 *et. seq.* changed Kentucky from an equitable title state to a certificate of title state wherein the legal titleholder is considered the owner of a vehicle *in the absence of a valid conditional sales or lease agreement."* *Potts v. Draper*, 864 S.W.2d 896, 900 (Ky. 1993) (citing KRS 186.010(7) (emphasis added)). Kentucky Revised Statute 186.010(7)(a) "defines a vehicle 'owner' as (1) 'a person who holds the legal title of a vehicle or [ (2) ] a person who pursuant to a bona fide sale has received physical possession of the vehicle....'" *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005). Kentucky Revised Chapter 186 has been held to apply to ownership of a motor vehicle for the purpose of insurance coverage. *See Potts*, 864 S.W.2d at 899; *Nantz v. Lexington Lincoln Mercury Subaru*, 947 S.W.2d 36, 37 (Ky.1997).

---

**6.** Best cannot submit a later affidavit contradicting his earlier sworn answers to interrogatories to defeat summary judgment. *See generally, Gilliam v. Pikeville United Methodist Hospital of Kentucky, Inc.*, 215 S.W.3d 56, 62–63 (Ky.App.2006), *disc. rev. denied* (2007). He can, however, explain inconsistencies in his earlier sworn answers to interrogatories in a later affidavit. *See generally, Lipsteuer v.*

*CSX Transportation*, 37 S.W.3d 732 (Ky.2000). While his sworn answers to his interrogatories do not appear to have patent inconsistencies, it is conceivable that he only admitted that Diana had title, but did not further explain how he believed she received title, as he does in his affidavit. Obviously, Best is subject to Kentucky Rules of Civil Procedure (CR) 11.

It is important not to overlook the fact that in *Potts* the Court held that the title holder is the owner of the vehicle in the *absence of a sales contract.* This point was again stated in *Nantz.* Thus, while Diana may have been a title holder (keeping in mind that Best questions how Diana gained title to the G35 Infinity), Best has presented at least some evidence that he paid for the vehicles and was the owner pursuant to a bona fide contract.

West American disputes Best's claims of ownership based on Diana's attestations regarding payment under the sales contract and the fact that Diana retained title to the vehicles. Consequently, the question is whether Best qualifies as a "vehicle owner," and whether he was a victim of theft when the vehicles were taken.

In light of the dueling affidavits of Best and Diana, we find there are issues of fact in dispute in this matter defeating summary judgment for either party.[7] Diana has title, but Best disputes how she received this title in light of his purchase contract from Anthony's Auto Sales, as attested to by Tammy Reece. In order to determine whether Best qualified as the owner of the vehicles in question, there must be a determination whether he had physical possession of the vehicles "pursuant to a bona fide sale." KRS 186.010(7)(a). Moreover, Best had to keep possession of the vehicles for eleven months. Diana attests in her affidavit that she made numerous attempts to collect the alleged owed money from Best. Best disputes this and attests that after Steve requested payment via a wire transfer to 4–D Development, Best complied within ten days, wiring a cashier's check for $36,504 to 4–D Development, where Steve

is the service process agent and in the city where Diana's affidavit was signed. Curiously absent from the record are any attestations from Steve regarding whether he received the payment from Best. West American presents nothing to refute Best's attestations that pursuant to Best's conversation with Steve, Best wire transferred the cashier's check to 4–D Development for payment of the contract within ten days of Steve's request to do so.

In light of the conflicting affidavits and the record not presenting a full picture of the underlying transaction between Best and the Lazzarinis, we hold that issues of material fact exist sufficient to defeat summary judgment under Kentucky's standards regarding whether Best fulfilled his contractual obligations to be an owner pursuant to a bona fide contract and regarding how Diana obtained title to the G35 Infinity vehicle. This case is not analogous to other cases holding that a title holder with a superior right can repossess a vehicle, without that action being considered a theft. In this case, enough evidence has been presented to question whether the person claiming a superior right to ownership can lawfully repossess the vehicles at issue or whether Best is the victim of theft by the Lazzarinis, who apparently now reside in California.

**B. WEST AMERICAN'S CLAIMS REGARDING BEST'S FAILURE TO PROMPTLY NOTIFY IT OF THE ALLEGED THEFTS.**

 We will briefly address West American's alternative arguments that it does not have to pay Best's claims because he failed to promptly notify it of the alleged thefts as required under the insur-

---

7. We note that the parties submitted cross-motions for summary judgment, indicating to the trial court that factual matters were not in dispute and that only legal issues existed. Nonetheless, the parties have not entered into stipulations regarding factual issues and despite their filing cross-motions, we find there are factual issues.

ance policy. Pursuant to *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 802–03 (Ky.1991), an insurer may not deny coverage because the insured failed to provide prompt notice of loss unless the insurer can prove that it is reasonably probable that it suffered substantial prejudice from the delay in notice. This is West American's burden and West American's having failed to cite to this Court any evidence fulfilling this duty, summary judgment is not warranted on this claim.

### C. WEST AMERICAN'S ALLEGATION THAT CERTAIN CLAIMS RAISED IN CIRCUIT COURT WERE NOT RAISED ON APPEAL

The circuit court ruled that because it found that "Best did not have a claim for theft under the policy, he cannot assert any common law or statutory claim for bad faith with respect to West American's handling of or denial of his claim." West American argues that Best does not challenge this on appeal.

It is true the bulk of Best's brief and reply concern his arguments regarding his theft claims. Nonetheless, in the conclusion of his reply brief, Best submits

As the summary judgment on the issues of the Unfair Claims Settlement Practices Act was independent of the trial court's determination that the Appellee bore no liability for coverage for theft, the Appellant submits that this matter must be remanded to the Hardin Circuit Court with directions to proceed to trial on both the issue of coverage for theft and the issue under the Unfair Claims Settlement Practices Act.

■ " 'The reply brief is not a device for raising new issues which are essential to the success of the appeal.' " *Catron v. Citizens Union Bank*, 229 S.W.3d 54, 59 (Ky. App.2006) (quoting *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky.App.1979)). While we

could question whether the bad faith claim as adjudicated by the trial court is essential to the success of this appeal, a more elementary problem Best has, however, is the fact that he did not include the bad faith claim in his prehearing statement. Pursuant to CR 76.03(8):

A party shall be limited on appeal to issues in the prehearing statement except that when good cause is shown the appellate court may permit additional issues to be submitted upon timely motion.

■ Best has not moved the Court, for good cause, to consider the bad faith claim on review, after having failed to include it in his prehearing statement. Accordingly, this issue is not properly before the Court.

For the reasons as stated, the order of the Hardin Circuit Court is vacated in part, and this matter is remanded for proceedings consistent with this opinion.

ALL CONCUR.