Jimmy ROGERS, Appellant,

v.

INTEGRITY HEALTHCARE
SERVICES, INC.,
Appellee.

No. 2010–CA–001876–MR.

Court of Appeals of Kentucky.

Jan. 27, 2012.

Ephraim W. Helton, Danville, KY, for appellant.

Hadden Dean, Danville, KY, Michael Nolan, St. Louis, MO, for appellee.

Before CAPERTON, KELLER, and LAMBERT, Judges.

## OPINION

LAMBERT, Judge:

Jimmy Rogers appeals from the Lincoln Circuit Court's grant of summary judgment in favor of Integrity Healthcare Services, Inc. ("Integrity")[1] as to Rogers's medical malpractice claims against Integrity. After our review, we affirm.

### Facts and Procedural History

On June 29, 2006, Rogers asserted a claim of medical malpractice against Integrity on the grounds that Integrity had negligently inserted, maintained, removed, and implemented an intravenous device known as a "midline" during an infusion of antibiotic medication. As a result of this alleged negligence, Rogers claimed that his arm was disfigured and that he was consequently entitled to an award of damages to recoup his medical expenses and lost wages and to compensate him for his pain and suffering.

The case languished for nearly four years with little activity. During this time, Rogers served no written discovery on Integrity and made no requests to depose any of Integrity's employees or any other witnesses. Integrity served Rogers with written interrogatories and requests for production of documents in March 2007. When Rogers failed to respond, Integrity filed a motion to compel, which was granted in January 2009. Rogers finally served his verified responses to Integrity's discovery requests in April 2009.

Of particular note, two interrogatories asked Rogers to describe any evidence of Integrity's alleged negligent acts and how those acts caused his injuries. In response to Integrity's "Interrogatory No. 2," which requested him to "[s]tate in specific detail each and every fact which you claim to constitute evidence of negligence on the part of Integrity[,]" Rogers gave the following answer:

> I was administered an antibiotic through an IV which was inserted into my right arm. A knot formed on my right arm near the insertion of the IV line, which became a sore. I went to see Dr. Enlow about this. He sent me to a surgeon.

When asked in "Interrogatory No. 3" to "[s]tate in specific detail the manner in which you claim each alleged negligent act or omission of Integrity was a substantial

1. The record reflects that Integrity also did business under the name "Curascript IP Infusion Pharmacy."

factor in causing the injuries claimed in this action[,]" Rogers replied with the following:

> I reported to the Wound Care nurse that the IV was making me sick. I was told that the IV needed to stay in my arm or, if removed, the entire process of inserting the IV would have to begin again. The IV would have to stay in for eight weeks.

Rogers's remaining interrogatory answers provided no additional grounds for his negligence claim. They also failed to identify any expert witness expected to offer an opinion as to whether Integrity had breached its standard of care or had caused Rogers's alleged injuries through its acts or omissions. Rogers additionally indicated that he had "no knowledge" of any communication by any of Integrity's agents, servants, or employees regarding his allegations. No other discovery was conducted.

On November 1, 2009, Integrity filed a motion for summary judgment on the grounds that Rogers had failed to produce any evidence supporting his claim of medical malpractice. Integrity specifically argued that Rogers had failed to demonstrate: (1) that Integrity had breached the applicable standard of care; and (2) that Integrity's actions were the proximate cause of his injuries. Integrity also noted that Rogers had failed to provide an opinion from an expert witness regarding these issues.

On the day prior to the scheduled hearing on Integrity's motion for summary judgment, Rogers filed an affidavit alleging the following evidence in support of his negligence claim and in opposition to Integrity's motion:

> 2. That after the midline was removed from his arm by a physician, he was informed by Rebecca Lewis and Jackie Smith, Defendant's agents, that the midline had been improperly placed in his arm, by the Defendant's agents, and that the injuries for which he is seeking compensation herein, are the result of the improper placement of the midline by the Defendant's agents.
>
> 3. That Rebecca Lewis and Jackie Smith were agents for the Defendant at the time of the injury, and their admission constitutes [an] acknowledgment of liability on Defendant's behalf, for which the Plaintiff is seeking compensation herein.[2]

At the hearing, counsel for Integrity argued that the affidavit should be rejected as a basis for denying the motion for summary judgment since it directly contradicted Rogers's verified interrogatory answers, wherein he stated that he had "no knowledge" of any statements made by any agents of Integrity regarding the subject matter of the lawsuit. Integrity also alleged that the facts set forth in the affidavit conflicted with Rogers's answers to other interrogatories that asked him to identify the facts upon which his claim of negligence was based. Integrity further contended that nothing in the record established that the employees referenced in the affidavit were qualified to render an opinion regarding medical causation.

On July 2, 2010, the circuit court entered an order granting Integrity's motion for summary judgment. The court first noted that in the four years that the case had been pending, Rogers had failed to provide any evidence of either a breach of the standard of care or legal causation of his injuries. The court then observed that Rogers had failed to provide the name or address of any expert witness expected to offer a medical opinion at trial as to these

---

**2.** The affidavit was unaccompanied by a responsive pleading.

issues. The court also noted that the parties had had ample time to conduct discovery in the case and that Rogers had not requested any time to conduct additional discovery prior to submission of the motion for summary judgment.

As to the affidavit filed by Rogers, the circuit court found that the facts stated therein directly contradicted answers given by Rogers in his previous interrogatory answers. Citing to *Lipsteuer v. CSX Transportation, Inc.*, 37 S.W.3d 732 (Ky. 2000) and *Gilliam v. Pikeville United Methodist Hospital of Kentucky, Inc.*, 215 S.W.3d 56 (Ky.App.2006), the court concluded that as a result, the affidavit did not merit rejection of Integrity's motion for summary judgment since "an affidavit which merely contradicts earlier testimony cannot be submitted for the purpose of attempting to create a genuine issue of material fact." *Lipsteuer*, 37 S.W.3d at 736.

Rogers subsequently filed a motion asking the circuit court to set aside the summary judgment pursuant to Kentucky Rules of Civil Procedure ("CR") 59.05. Rogers also requested a sixty-day extension so he could depose the nurses referenced in his affidavit. On September 13, 2010, the court entered an order denying the motion (albeit pursuant to CR 60.02) on the grounds that it merely restated the same arguments Rogers relied upon in challenging the motion for summary judgment—specifically, that the tendered affidavit established genuine issues of material fact precluding summary judgment. This appeal followed.

### Analysis

On appeal, Rogers argues that the circuit court erred in granting Integrity's motion for summary judgment and in denying his motion to set aside that judgment. The standards for reviewing a circuit court's entry of summary judgment on appeal are well-established and were concisely summarized by this Court in *Lewis v. B & R Corporation*, 56 S.W.3d 432 (Ky.App.2001):

> The standard of review on appeal when a trial court grants a motion for summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present at least some affirmative evidence showing that there is a genuine issue of material fact for trial.

*Id.* at 436 (Internal footnotes, quotation marks, and citations omitted). Because summary judgments involve no fact finding, we review the circuit court's decision *de novo*. *3D Enters. Contr. Corp. v. Louisville & Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky.2005); *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000).

Rogers first challenges the circuit court's reliance upon *Lipsteuer, supra,* and *Gilliam, supra,* which held that an affidavit cannot be used to defeat a motion for summary judgment if it contradicts previous testimony provided by the non-moving party. Rogers admitted in his motion to set aside the summary judgment that his affidavit contradicted his previous interrogatory answers. However, he contends that the subject decisions are inapposite in

this case and that summary judgment was, therefore, entered erroneously because they dealt with affidavits that contradicted *deposition testimony*—not interrogatory answers.

■ As correctly noted by Integrity, though, Rogers failed to raise this particular argument before the circuit court. Therefore, we consider it waived since " '[a] new theory of error cannot be raised for the first time on appeal.' " *Fischer v. Fischer*, 348 S.W.3d 582, 588 (Ky.2011), *quoting Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky.1999); *see also Hutchings v. Louisville Trust Co.*, 276 S.W.2d 461, 466 (Ky.1954) ("[I]t is the accepted rule that a question of law which is not presented to or passed upon by the trial court cannot be raised here for the first time."). Moreover, this Court has explicitly recognized that a party "cannot submit a later affidavit contradicting his earlier *sworn answers to interrogatories* to defeat summary judgment." *Best v. West American Ins. Co.*, 270 S.W.3d 398, 403 n. 6 (Ky.App.2008) (Emphasis added). Thus, no "extraordinary error" occurred here that would merit relief in the absence of preservation. *See Fischer*, 348 S.W.3d at 589; CR 61.02. Accordingly, Rogers's argument must be rejected.

■ Rogers next contends that his interrogatory answers were not entirely inconsistent with the subject affidavit because they identified "Nurse with Home Care" as an individual who had provided him with an opinion that the care he received from Integrity was below the standard of care and had caused his injuries. This argument was also not raised before the trial court and, therefore, must be rejected as unpreserved. *See Fischer*, 348 S.W.3d at 588.

Moreover, while Rogers claims that "Nurse with Home Care" was an employee of Integrity, it is impossible to ascertain whether this is actually the case. We note, though, that in another interrogatory response, he identified "Integrity Nurse" as a witness whom he intended to call at trial. This suggests that "Nurse with Home Care" worked for another company. We further note that Rogers's assertion in this regard is inconsistent with his interrogatory answer indicating that he had "no knowledge" of any communication by any of Integrity's agents, servants, or employees regarding his allegations. Consequently, his argument lacks merit.

■ Rogers next argues that the circuit court nonetheless should have relied upon the affidavit and denied Integrity's motion for summary judgment because Integrity's employees admitted to a breach of the standard of care and causation. However, even assuming *arguendo* that the nurses were qualified to opine on the standard of care question in a case such as this, their qualification to opine as to causation is an entirely different matter.

■ "It is beyond dispute that causation is a necessary element of proof in any negligence case." *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky.1991). "[I]n most medical negligence cases, proof of causation requires the testimony of an expert witness because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony." *Id.* (Footnote omitted); *see also Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky.App.2006).[3] Thus, in order "[t]o

---

**3.** There are two exceptions to this rule, *see Andrew*, 203 S.W.3d at 170–71, but Rogers has not argued that either of them applies here. Therefore, we assume that testimony

from a medical expert was needed in this case and that Integrity's motion for summary judgment based on a lack of proof was properly

survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Andrew*, 203 S.W.3d at 170.

Integrity asserts—correctly—that the subject affidavit fails to establish that either of the nurses was qualified as an expert to opine on medical causation and provides no evidence of their respective backgrounds, qualifications, or their knowledge of the subject medical history. Moreover, Rogers did not produce any reports or statements from the nurses summarizing or explaining their opinions and the bases for them. In light of these threshold failures, we cannot say that the circuit court erred in refusing to consider the affidavit and the opinions offered by the nurses therein as evidence of medical causation or in consequently entering summary judgment.[4] Rogers had ample time to produce expert witnesses to support his cause of action and to sustain his burden of proof, but he failed to do so. Therefore, Integrity was entitled to summary judgment as a matter of law. *See Blankenship*, 302 S.W.3d at 673.

■ Rogers finally contends that the circuit court erred in denying his motion to set aside the summary judgment. He relies solely upon the fact that while his motion was brought pursuant to CR 59.05, the circuit court's denial was based on the standards set forth in CR 60.02. Because of this, Rogers argues that reversal is

merited. We disagree. Rogers failed to bring this discrepancy to the attention of the circuit court during the hearing on his motion or in a pleading, which again brings the issue of preservation into question. *See Fischer*, 348 S.W.3d at 588. Moreover, even after considering the standards to set aside a judgment pursuant to CR 59.05, it is clear that the circuit court did not abuse its discretion in denying Rogers's motion.[5]

CR 59.05 provides only that "[a] motion to alter or amend a judgment, or to vacate a judgment and enter a new one, shall be served not later than 10 days after entry of the final judgment." Although CR 59.05 does not set forth the specific grounds for relief under the rule, the Supreme Court of Kentucky has cited to its federal counterpart, Federal Rule of Civil Procedure 59(e), in limiting the grounds to the following:

> First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

*Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky.2005), *quoting* 11 Wright & Miller, Federal Practice & Procedure: Civil (2d

---

before the circuit court. *See Blankenship v. Collier*, 302 S.W.3d 665, 673 (Ky.2010).

4. As an aside, we also note that other courts have recognized, as a matter of law, that nurses are not qualified to give expert opinion testimony regarding medical causation in medical negligence cases. *See, e.g., Elswick v. Nichols*, 144 F.Supp.2d 758, 766–67 (E.D.Ky. 2001); *Long v. Methodist Hosp. of Indiana,*

*Inc.*, 699 N.E.2d 1164, 1168–69 (Ind.Ct.App. 1998); *Vaughn v. Mississippi Baptist Med. Ctr.*, 20 So.3d 645, 652–53 (Miss.2009); *Richberger v. West Clinic, P.C.*, 152 S.W.3d 505, 511–12 (Tenn.Ct.App.2004).

5. A trial court's ruling pursuant to CR 59.05 is reviewed under the abuse of discretion standard. *Bowling v. Kentucky Dept. of Corrections*, 301 S.W.3d 478, 483 (Ky.2009).

ed.) § 2810.1. Rogers fails to indicate which of these grounds is applicable here.

Moreover, it is well-established that "[a] party cannot invoke CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of the judgment." *Id.* As noted by the circuit court, Rogers's motion did nothing more than reassert the same arguments that he made in challenging Integrity's motion for summary judgment. Consequently, while the circuit court's order cited to CR 60.02 rather than to CR 59.05, its decision was otherwise sound and did not constitute an abuse of discretion. *See Emberton v. GMRI, Inc.,* 299 S.W.3d 565, 576 (Ky. 2009).

## Conclusion

For the foregoing reasons, the decision of the Lincoln Circuit Court is affirmed.

ALL CONCUR.